NATHANIEL H. STONE & others, trustees, *vs.* W. CAMERON
FORBES & others, trustees, & others.

Norfolk.  March 27, 28, 1905. — September 11, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Power.  Devise and Legacy.  Perpetuities.*

Whether in this Commonwealth the rule that a general disposition of property by
will is presumed to include the execution of a power of appointment does not
apply to a special power as well as to a general power, and whether a special
power cannot be executed by anticipation in the same way as a general power,
*quære.*

If a will declares that the testator thereby disposes of all the property of every
kind of which he may be at his death seised or possessed or over which he may
then have any power of disposition whatsoever, and if at the time of making the
will the testator was ignorant of the provisions of the will of his father, who
dying later gives him by will the power of testamentary appointment over a
certain fund among the father's direct descendants, and if after the death of his
father and knowing of the existence of the power the son makes a codicil to his
will, confirming his will in all particulars except as modified by the codicil, and
if his will, after certain bequests, gives the residue of his property to trustees to
be divided into three parts, the income of one of which shall be paid to his
widow as long as she lives, the principal to fall at her death into the other two
thirds, and the other two thirds to be held in trust for the benefit of his children
and the issue of any deceased child by representation, to be paid to them on ar-
riving at a certain age, and if the testator has ample property to provide for his
wife and children apart from that derived from his father's estate, this is an
execution by the son of the power of appointment under the will of his father,
and the provision directing that one third of the income of the property put in
trust shall be paid to the testator's widow during her life, applies only to the
testator's own estate.

A power given by will to the children of the testator, to dispose by will of their
respective shares in a certain fund to and among the testator's direct descend-
ants, is not bad on the ground that an appointment could be made under it
which would be beyond the limits of the rule against perpetuities, because the
power cannot be exercised at a time beyond the limits of the rule, and if an
appointment under the power is within the rule it is valid.

A will, held to be in execution of a power as well as disposing of the testator's
estate, left the residue of the testator's property in trust and, after providing
that one third of the property should be set apart to pay the income thereof to
his widow during her life, the principal after her death to be disposed of with
the remaining two thirds, provided as follows: "The remaining two thirds
together with the one third above disposed of, after the death of my wife, shall
be held by my trustees for the benefit in equal shares of such of my children as
may be living at my death and the then living issue by representation of any
child who may die before me and I direct my trustees subject to the provisions

below made respecting the holding of real estate to pay over immediately upon my death or so soon thereafter as the property may come to their hands the share of any son who may have reached at my death the age of thirty years and the share of any daughter who may then have reached the age of twenty five years and also the share of the issue by representation of any child who may have died before me leaving issue living at my death but the shares of my children who may not then have reached the age above prescribed shall be held and managed by my trustees and the income accruing thereon shall be paid over to them respectively at convenient times as it may accrue until they respectively reach the prescribed age the income of any daughter being paid to her upon her sole and separate receipt and upon my children severally reaching that age, namely thirty years, in the case of sons and twenty five years in the case of daughters, the principal of their shares shall be paid over to them respectively, free and discharged of any trust and if any child die after me and before reaching the prescribed age the principal of his or her share shall be paid over as he or she may by will appoint and in default of such appointment shall be disposed of and distributed as a part of his or her estate and the trustees shall pay it over to his or her representatives for that purpose." *Held,* that the share of the issue of a child who died before the testator was payable to such issue only on arrival at the age prescribed for payment to the testator's children.

BILL IN EQUITY, filed June 2, 1904, by the trustees under the will of John M. Forbes, for instructions.

The case came on to be heard before *Braley,* J., who reserved it upon the pleadings and agreed facts, so far as material, for determination by the full court.

The material portions of the will of John M. Forbes are quoted in the opinion. The portions of the will and codicil of J. Malcolm Forbes material to the question of the execution of the power given to him by the will of John M. Forbes also are quoted in the opinion.

The following portion of the will of J. Malcolm Forbes is that interpreted in the next to the last paragraph of the opinion on the question whether the provisions as to time of payment apply to a grandchild as well as to the children of the testator.

"All the rest and residue of the trust property and estate shall be divided by my trustees so that one third part thereof shall be set apart and held upon a separate trust for my wife and the income accruing thereon shall be paid over to her at convenient times so long as she may live and on her death the principal thereof shall be added to the remaining two thirds below disposed of and when so added shall be held and finally paid over in all respects as if it had originally formed a part of such two thirds.

" The remaining two thirds together with the one third above disposed of, after the death of my wife, shall be held by my trustees for the benefit in equal shares of such of my children as may be living at my death and the then living issue by representation of any child who may die before me and I direct my trustees subject to the provisions below made respecting the holding of real estate to pay over immediately upon my death or so soon thereafter as the property may come to their hands the share of any son who may have reached at my death the age of thirty years and the share of any daughter who may then have reached the age of twenty five years and also the share of the issue by representation of any child who may have died before me leaving issue living at my death but the shares of my children who may not then have reached the age above prescribed shall be held and managed by my trustees and the income accruing thereon shall be paid over to them respectively at convenient times as it may accrue until they respectively reach the prescribed age the income of any daughter being paid to her upon her sole and separate receipt and upon my children severally reaching that age, namely thirty years, in the case of sons and twenty five years in the case of daughters, the principal of their shares shall be paid over to them respectively, free and discharged of any trust and if any child die after me and before reaching the prescribed age the principal of his or her share shall be paid over as he or she may by will appoint and in default of such appointment shall be disposed of and distributed as a part of his or her estate and the trustees shall pay it over to his or her representatives for that purpose."

*H. James, Jr.*, for the trustees under the will of John M. Forbes stated the facts.

*J. B. Warner*, for the trustees under the will of J. Malcolm Forbes.

*H. E. Warner*, for Gerritt Forbes and others, children and a grandchild of J. Malcolm Forbes.

MORTON, J. This is a petition for instructions by trustees under the will of John M. Forbes. The question is whether J. Malcolm Forbes, a son of John M. Forbes, who has deceased since his father leaving a will which has been duly allowed, has executed in and by his will a power of appointment which it is

conceded was given to him by the will of his father, and whether the execution is a valid exercise of the power.

John M. Forbes after establishing a fund called The Permanent Fund for the benefit of his children provided by a codicil dated May 9, 1885, that " my children shall have the power to dispose by will of their respective shares of the principal of said permanent fund to and among, but only to and among, such one or more of my direct descendants, in such proportions and on such terms, whether in trust for their benefit or otherwise, as they see fit, and I authorize and direct the trustees of said permanent fund, upon the decease of any child or children of mine, leaving such will or wills, to pay over, transfer and convey the respective share or shares of such deceased child or children of mine to such descendant or descendants of mine, or for their benefit, as such deceased child or children of mine shall by their last wills direct." By a codicil dated May 26, 1894, he further provided that, " In all cases where I have given the right to my children to dispose by will of their shares of the trust property to their descendants, I now give to them the full right to put any and all bequests in trust and also to make their bequests different in amount, if they deem it advisable to do so, giving more to one than to another, leaving it to the judgment of my children as to what is on the whole best for my descendants." John M. Forbes died October 12, 1898. J. Malcolm Forbes, the son, died February 19, 1904, leaving a will dated February 16, 1898, and a codicil, dated February 11, 1904, a few days before his death. He begins his will by declaring that he disposes "hereby of all the property of every kind of which I may be at my death seised or possessed or over which I may then have any power of disposition whatsoever whether the same be in this Commonwealth or in any other State or country," and by the codicil he expressly confirms the will " in all particulars except so far as modified by this codicil." The codicil contains nothing further material to the questions before us. By his will, after bequests of $20,000 to each of his sons living at his death who shall then be twenty-five years of age, and to his daughters who shall then be twenty-three years of age, and like provisions by means of trustees for the benefit of infant children, he gives the rest and residue to the same trustees in trust to make certain specific

conveyances and gifts not now material, and directs that the residue of the trust estate shall be divided into three parts the income of one of which shall be paid to his widow so long as she lives, the principal to fall at her death into the other two thirds, and the other two thirds to be held in trust for the benefit in equal shares of children living at the testator's death and the issue by representation of any deceased child, the income of the shares to be paid to the respective beneficiaries, and as the sons arrive at the age of thirty years and the daughters at the age of twenty-five years the principal of their respective shares to be paid to them. There is also a provision that if any child shall die before reaching the appointed age the principal of his or her share shall be paid as he or she shall by will appoint, and, in default of such appointment, shall be disposed of as a part of such child's estate.

There is a stipulation between the parties that the facts admitted and alleged in the answers are agreed to so far as competent and material. Amongst the facts so alleged, and therefore to be taken as agreed to, if material and competent, are the following, namely: that at the time when he made his will in February, 1898, J. Malcolm Forbes was wholly ignorant of the provisions of the will of his father and had no knowledge of those provisions or of the power of appointment given to him by the will of his father till after the death of the latter; that when he made his will in February, 1898, he was possessed of a large property independent of any expectations from his father, and that after the death of his father his property largely increased and at the time of making his will and at all times thereafter was sufficient for liberal provision for his wife and children under the terms of his will without including therein the property over which he was given a power of appointment by his father's will. It is also alleged in one of the answers, and likewise to be taken as agreed, that the amount of the permanent share in the hands of the plaintiffs to be paid as the court shall direct is sufficient to satisfy the legacies of $20,000 given by J. Malcolm Forbes to his children and to leave a large excess, and that if the entire amount of that share were to be included in the residuary estate passing under his will for the purpose of ascertaining the third to be set apart for the benefit of the widow,

. such third could be set apart from property absolutely owned by him without encroaching on any sum that might be received from the petitioner in satisfaction of the provisions of the will of John M. Forbes.

It is settled in this Commonwealth that a general power of appointment is well executed, in the absence of anything to show a contrary intention, by a general residuary clause in the will of the donee of the power. *Amory* v. *Meredith,* 7 Allen, 397. *Willard* v. *Ware,* 10 Allen, 263. *Bangs* v. *Smith,* 98 Mass. 270. *Sewall* v. *Wilmer,* 132 Mass. 131. *Cumston* v. *Bartlett,* 149 Mass. 243. *Hassam* v. *Hazen,* 156 Mass. 93. And, whatever may have been the case formerly, that is now the law in England. *Airey* v. *Bower,* 12 App. Cas. 263. *Boyes* v. *Cook,* 14 Ch. D. 53. And both in this Commonwealth and in England the fact that the power is created after the execution of the will does not prevent the will from operating as an execution of the power. *Willard* v. *Ware,* 10 Allen, 263. *Osgood* v. *Bliss,* 141 Mass. 474. *Airey* v. *Bower, ubi supra.* In England these results have been arrived at by means of statutory enactments. But in this Commonwealth they have been reached by the application of general principles. In this case, however, the power is a special one, and it is contended that different rules apply. It is conceded that, in regard to special as well as in regard to general powers, the question is one of intention on the part of the donee of the power. But it is contended that those claiming under a special power must show affirmatively that the donee intended to execute it, that it is doubtful whether a special power can be exercised by a will executed before the power was created, and that there is nothing in the case before us which fairly warrants the conclusion that the donee of the power intended to execute it.

On principle there would seem to be no just ground for a distinction between general and special powers so far as relates to the execution of the power before or after it is created. It may be that by reason of its conditions or limitations the reasons are stronger for holding that a special power cannot be executed by anticipation than for holding that a general power cannot; but they do not seem to us enough stronger to warrant us in saying that in one case the power can be executed by anticipation and

in the other that it cannot.   A general power of appointment is hardly less within the range of expectation than a special power. Before the wills act so called, 1 Vict. c. 26, § 27, it was the law of England that a party claiming under a power must show that the donee intended to execute it, the presumption being that he had not executed it unless the contrary plainly appeared.  *Amory* v. *Meredith,* 7 Allen, 397.   *Mills* v. *Mills,* 34 Ch. D. 186, 194. *Foulkes* v. *Williams,* 42 Ch. D. 93.

The wills act changed this with regard to general powers, but, in consequence of the construction given to the act by the courts, left special powers unaffected.   *Turnbull* v. *Hayes,* [1900] 2 Ch. 332 ; *S. C.* on appeal, [1901] 2 Ch. 529.   *Foulkes* v. *Williams, ubi supra.*

In regard to general powers the rule now is that a general devise of property real or personal is presumed to include a general power of appointment unless the contrary appears from the will.   Jarm. Wills, (6th ed.) 634, 635.   In regard to special powers the rule remains the same as laid down before the passage of the wills act respecting powers generally.   If it were necessary to determine the question we should hesitate to follow the rule laid down by the English cases in regard to special powers of appointment.   There is certainly less reason for doing so since *Amory* v. *Meredith* than before.   There would seem to be no good reason why the question whether a special power of appointment had been exercised should not be determined by the same rules that are applied in other cases to the construction or interpretation of wills, or why the distinction between a power and property, which has resulted in many instances, as courts have been compelled to admit, in defeating the intention of the testator should be adhered to in cases where as in the present the donee of the power has the use of the property for his life and may, not unnaturally or unreasonably, have failed to distinguish between property strictly and technically belonging to him and that of which he has the use.   But we do not think that it is necessary to determine whether the rule laid down by the English cases in regard to special powers should or should not be followed in this Commonwealth.   For we think that it clearly appears that J. Malcolm Forbes intended to exercise the power and that he has done so.   As already observed he begins his

will by declaring that he intends by it to dispose of all the property of every kind of which at his death he may be seised or possessed, or over which he may then have any power of disposition whatsoever. Broader language could hardly be used, or language more clearly anticipating a power of appointment. But any doubt that might otherwise exist is removed, it seems to us, by the codicil. When the codicil was executed John M. Forbes had been dead for several years, and the son was familiar with the terms of the will, and with the power of appointment that it gave to him. By the codicil he expressly confirmed his own will in all particulars except as modified by the codicil. The effect of this was to republish the will as of the date of the codicil, and to give to it, at least so far as the power of appointment was concerned, the same effect as if it had then been written. *Haven* v. *Foster*, 14 Pick. 534. *Hosea* v. *Jacobs*, 98 Mass. 65. *In re Blackburn*, 43 Ch. D. 75. *In re Teape's trusts*, L. R. 16 Eq. 442. *Von Brockdorff* v. *Malcolm*, 30 Ch. D. 172. *In re Swinburne*, 27 Ch. D. 696. *Thornton* v. *Thornton*, L. R. 20 Eq. 599. *Ferrier* v. *Jay*, L. R. 10 Eq. 550. *Bailey* v. *Lloyd*, 5 Russ. 330. *Banks* v. *Banks*, 17 Beav. 352. *Cowx* v. *Foster*, 1 J. & H. 30.

Treating the will as then executed, as we are bound to, we think, in view of its express confirmation by the codicil, we have the testator with knowledge of the power of appointment expressly declaring his intention to dispose not only of all property of which he may be seised or possessed at the time of his death, but also of all property over which he " may then have any power of disposition whatsoever ", " words," in the language of Lord Selborne in *In re Teape's trusts*, " applicable to any power of appointment he might possess, but which I am [we are] asked not to apply to the only power he actually had." Construing the will according to well settled rules of construction there is nothing in it inconsistent with the intention thus declared. The testator deals with the property in a mass, that which belongs to himself and that over which he has a power of appointment. And the provision directing a third of the rest and residue of the property which he puts in trust to be set apart and the income thereof paid to his wife can be interpreted without difficulty, applying the rule *reddendo singula singulis*, as relating to

his own estate (*Ferrier* v. *Jay, In re Teape's trusts, Thornton* v. *Thornton, In re Blackburn, Bailey* v. *Lloyd, ubi supra*), leaving the clauses in regard to the children to operate, according to the same rule, both upon his own estate and that over which he had a power of appointment and constituting an execution of the power if the appointment is otherwise valid. Any other construction would ignore, it seems to us, his declared purpose to dispose by his will of all property of which at his death he should be seised or possessed, or over which he should " then have any power of disposition whatsoever," and the express confirmation of the will by the codicil. There are, it is true, cases in which it has been held that general words of disposition did not operate to execute a special power, and that the republication and confirmation of the will by a codicil did not give effect to such a power created after the execution of the will. *Hope* v. *Hope*, 5 Giff. 13. *Clogstoun* v. *Walcott*, 13 Sim. 523. *Foulkes* v. *Williams*, 42 Ch. D. 93. *Mills* v. *Mills*, 34 Ch. D. 186. *Turnbull* v. *Hayes*, [1900] 2 Ch. 332; *S. C.* on appeal, [1901] 2 Ch. 529. *Ames* v. *Cadogan*, 12 Ch. D. 868. *Wood* v. *Cotton*, 40 Ch. D. 41. *Sykes* v. *Carroll*, [1903] 1 Ir. R. 17. *Doyle* v. *Coyle*, [1895] 1 Ir. R. 205.

But *Clogstoun* v. *Walcott* and *Hope* v. *Hope* have not been followed in later English cases. In *Ferrier* v. *Jay, In re Teape's trusts, In re Blackburn, ubi supra,* and in the other cases cited, the English courts, following the rules laid down by their decisions, and considering all the circumstances and the other provisions of the will, have been unable to find an intention on the part of the testator to exercise the power. We discover, as already observed, no such difficulty in this case. The English cases as said by Romer, L. J. in *Turnbull* v. *Hayes, ubi supra,* are " not easily reconcilable." The appointment is to the children of J. Malcolm Forbes and therefore to the direct descendants of John M. Forbes in accordance with the power, and in the absence of anything to show a contrary intention on the part of the donee of the power there would be strong ground for holding that the appointment of itself would operate as an execution of the power. But it is not necessary to go as far as that. When the appointment is taken in connection with the further fact that the appointor expressly declares in his will his intention to dispose thereby of property over which he may have at his death any power of dis-

position and republishes and expressly confirms the will by a codicil a few days before his death after he has known for a long time of the power of appointment given him by his father, any other conclusion than that his will operated as an execution of the power would, we think, be unwarranted. The express confirmation of the will by the codicil would seem to deprive of any significance, which they might otherwise have had, the facts that he did not know of the power when he executed his will and that his own property was sufficient to make liberal provision for his wife and children according to the terms of his will.

The remaining question is whether the appointment is a valid one. It is, as already observed, to the children of J. Malcolm Forbes and therefore to the direct descendants of John M. Forbes and comes within the express terms of the power so far as the persons who are to take are concerned. The only question is whether the power and the appointment under it infringe upon the rule against perpetuities. So far as the power itself is concerned the rule laid down by Mr. Gray and sustained by authorities referred to is that " a power which cannot be exercised beyond the limits of the rule against perpetuities is not rendered bad by the fact that within its terms an appointment could be made which would be too remote." Gray, Rule against Perpetuities, 322. Assuming that an appointment could be made under the power in this case that would be too remote, nevertheless the power is a good power because it must be executed, if at all, by the children of the donor, and therefore could not be exercised beyond the limits of the rule against perpetuities. It is not contended that the gifts to his children under the will of J. Malcolm Forbes did not vest at his death, or that the provisions in regard to payment did anything more than postpone the right of possession until the children had respectively reached the ages named ( *Wardwell* v. *Hale*, 161 Mass. 396 ; *Eldridge* v. *Eldridge*, 9 Cush. 516) ; so that, if the gifts are treated, as they must be, as made in effect by the will of John M. Forbes, they are not too remote. *Seaver* v. *Fitzgerald*, 141 Mass. 401. *Loring* v. *Blake*, 98 Mass. 253. The power of appointment given by the will of J. Malcolm Forbes to children dying under the prescribed age does not render the execution by him of the power given him by his father invalid. *Slark* v. *Dakyns*, L. R. 10 Ch.

35.  *Phipson* v. *Turner*, 9 Sim. 227.  The shares vested none the less in his children at his death.

It is contended that in any event the share of the fund in question coming to the granddaughter should be paid to her and not to the trustees under the will of J. Malcolm Forbes.  But the will provides that the trust estate " shall be held by my trustees for the benefit in equal shares of such of my children as may be living at my death and the then living issue by representation of any child who may die before me."  And we think that it was the intent of the testator that the share of the issue of any child who had died before him should be payable to such issue on arrival at the ages prescribed for his children.

The result is that the fund in the hands of the trustees under the will of John M. Forbes is to be paid over to the trustees under the will of J. Malcolm Forbes to be held by them to satisfy the gifts to the children and grandchild of the latter.

*Decree accordingly to be entered by a single justice and the costs of all parties to be paid out of the fund.*