LAURENCE MINOT & others, trustees, *vs.* JOHN B. PAINE
& others.

Suffolk. March 6, 1918. — June 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Power. Perpetuities, Rule against. Devise and Legacy. Marshalling of Assets.*

Where a general power of testamentary appointment over a certain fund is given
by will to a person who during his life is given only the income of the fund with-
out power of appointment by deed, the period of valid executory limitation as
determined by the rule against perpetuities for estates made by the exercise of
the power of appointment begins with the time of the death of the donor of the
power, although in ascertaining whether the limitation necessarily will take effect
within the time of a life or lives in being at the death of the donor and twenty-one
years afterwards, the facts to which the rule is to be applied are those that ex-
isted at the time of the death of the donee by whose will the power was exercised.

A testatrix, who had enjoyed the income of a trust fund during her life, and who
had under the will of the creator of the trust a general power of appointment by
will to dispose of the principal of the fund, exercised the power by her will and
gave a fund to trustees to pay the income to her husband during his life and
after his death "to hold the same for the benefit of my children." For three of
her sons she provided that after the death of their father each should receive an
equal proportionate share of the income of the fund "until he shall have attained
the age of twenty five years, and on his attaining the age of twenty five years,
to transfer and convey his equal and proportionate share of the trust fund to
such son in fee, free of these trusts." The husband of the testatrix died fifteen
years after her death, and all three of the sons referred to survived him. At
the time of the death of the testatrix each of these three sons was old enough
to reach necessarily the age of twenty-five years within twenty-one years from
the time of his mother's death, and necessarily also within twenty-one years
from the death of his father, both of their lives having been in being at the
time of the death of the donor of the power. *Held*, that the remainders to the
three sons were valid.

The same testatrix provided in the will for her fourth son, that, after the death of
his father, his proportionate share of the fund should be set apart as a separate
fund, of which he should receive the income during his life, and that at his death
the income of an amount named should be paid to his adopted daughter, named,
and that the remainder of his share should be paid to his issue, if any, then
living and in default of issue should be added to the shares of the other children
of the testatrix. This fourth son had no issue. *Held*, that the gifts of the income
to the fourth son and to his adopted daughter were valid, such gift to the adopted
daughter being vested although its enjoyment was postponed, but that the gift
over of the remainder of the share was void under the rule against perpetuities,
as it was not certain that this son might not live until more than twenty-one
years after the death of both his mother and father and then leave issue.

When one having a power of testamentary appointment after a life interest appoints to a person named an annuity with a general power to appoint by will a certain sum of money, this last power of appointment is void, because it is not restricted to the limitation required by the rule against perpetuities.

The testatrix who made the will in execution of the power above described also left a large estate of her own and in her will made no distinction between her own property and that appointed. The will contained numerous pecuniary legacies which plainly could be upheld as appointments under the power, and also a pecuniary legacy of which the limitation was void under the rule against perpetuities. By applying the appointed property to the gifts to the three sons of the testatrix first referred to above and to the other legacies which would be valid as appointments, the property subject to the power would be exhausted, leaving all other legacies, including the gift in remainder of the share of the fourth son, to be paid out of the testatrix's own property. It was the obvious intent of the testatrix that there should be no intestacy either as to the appointed property or as to her own estate. *Held,* that as a matter of construction the testamentary purpose to avoid intestacy should be carried out by first applying the property subject to appointment to those portions of the will which could operate lawfully as appointments, leaving the remaining gifts to be satisfied out of the testatrix's own estate and thus carrying into effect all the provisions of the will.

In the case above described it was *said* that it was unnecessary to determine whether the same result which was arrived at by the construction of the will could have been reached by the application of the doctrine of the marshalling of assets.

BILL IN EQUITY, filed in the Supreme Judicial Court on May 4, 1917, by the trustees under the will of Julia B. Paine, late of Weston, for instructions. The prayer of the bill asked for instructions upon the following matters:

"First: Whether any of the trusts declared in said will of Julia B. Paine are invalid under the rule of perpetuities as to any of the trust funds now held by them or as to any of the particular trusts declared in said will of said Julia B. Paine.

"Second: If it shall appear to the court that any of said trusts are invalid under said rule, whether it is now the duty of said trustees to marshal the funds held by them so as to satisfy such trusts entirely out of the property held by them which was derived from the individual property of said Julia B. Paine and use the appointed funds only for such of said trusts as are not invalid under the rule of perpetuities.

"Third: That this honorable court will instruct them as to their duties in distributing and holding said funds for the purpose of carrying out the various trusts set forth in said will of Julia B. Paine.

"Fourth: That this honorable court will grant them such other and further relief as may be necessary or advisable in the premises."

The case came on to be heard before *Braley*, J., who reserved it upon the pleadings and an agreed statement of facts for determination by the full court. The material facts are stated in the opinion. The power of appointment referred to in the prayer for instructions was contained in the will of Hannah Farnham Lee of Boston, dated June 26, 1862, with a codicil dated June 5, 1863. Hannah Farnham Lee died on December 27, 1865. She gave the power of appointment to her granddaughter Julia Bryant, who was born on June 29, 1847, and on March 26, 1867, married Charles J. Paine, born on August 26, 1833. Julia Bryant Paine died on September 4, 1901. Charles J. Paine died on August 12, 1916. The will of Julia Bryant Paine was dated August 31, 1901.

*F. Brewster,* for the trustees, stated the case.

*J. Wiggin,* for the defendants Mary A. Winsor and others.

*A. P. Stone,* for the defendant Louise Osgood Koopman, also for the defendants Mary A. Winsor and others.

*F. Ranney,* (*T. Allen, Jr.,* with him,) for the defendant Margaret D. Osborn.

*G. M. Palmer,* for the defendants John B., Charles J. and Frank C. Paine.

*L. Bond & A. R. Pike,* for the defendant Salome B. Fisher, submitted a brief.

RUGG, C. J. The main question in this case is whether in the case of a power to appoint property given by will, to be exercised solely by the will of the donee of the power, the period established by the rule against perpetuities is to be reckoned from the creation or from the exercise of the power. That precise question never has been decided in this Commonwealth. It has arisen in England and in some of the other States.

In *In re Powell's Trusts,* 39 L. J. Ch. 188, it was held by Vice Chancellor James that a power vested in a daughter by the will of her father to appoint by will after the termination of a life estate "being exercisable only on her death, was not equivalent to her having the absolute ownership of the fund which was tied up for the whole of her life. The interests in the fund purported to be conferred by Mrs. Hall's [the donee of the power] will on" her appointees, "must therefore be taken to be interests created by

the will of James Powell [the father and donor. of the power].
Hence the rule against perpetuities must apply to this case, and
the gift" over by the donee was held void for remoteness.    In
*D'Abbadie* v. *Bizoin,* Ir. R. 5 Eq. 205, at page 210, the same line
of reasoning appears to be followed.    It is said at page 210, in
commenting upon the will of a donee in execution of a power
created by will: "The limitations subsequent to the life estate
. . . are given in language which does not render it necessary that,
if they had. been inserted in the will which created the power,
they should become vested within the limits which the law has
prescribed.    In my opinion they are, therefore, bad."    The oppo-
site view was taken, however, by Chitty, J., in *Rous* v. *Jackson,*
29 Ch. D. 521, and he was followed by North, J., in *In re Flower,*
55 L. J. Ch. 200, and by Vice Chancellor Chatterton in *Stuart* v.
*Babington,* 27 L. R. Ir. 551.    All these decisions were made by
single judges.    There is no adjudication by the court of appeal or
the House of Lords.

There are several cases in England which hold that where power
to appoint to children is conferred by marriage settlements, the
appointments are referable for determination as to remoteness to
the settlement and not to the will of the donee.    Of this kind are
*Wollaston* v. *King,* L. R. 8 Eq. 165.    *Tredennick* v. *Tredennick,*
[1900] 1 Ir. R. 354.    *Cooke* v. *Cooke,* 38 Ch. D. 202.    See
also *Morgan* v. *Gronow,* L. R. 16 Eq. 1.    We need not pause to
consider whether by analogous reasoning resort should be had for
the same purpose to the will of the donor of a power created by
will.    See in this connection Gray, Rule against Perpetuities,
(3d ed.) § 520.    In any event there appears to be some uncertainty
as to the law of England.

In this country the current of authority is all in one direction,
to the effect that the question, whether the rule against perpetui-
ties has been violated, is referable to the time of the creation of
the power.    *In Matter of Dows,* 167 N. Y. 227, at page 231, it is
said: "For the purpose of determining whether the execution of a
power is in contravention of the statute of perpetuities, the estate
created under such power must be referred back to the instrument
granting the power.    This is settled law and was so held in *Genet* v.
*Hunt,* 113 N. Y. 158.    Any other rule would permit the evasion
of the statute against perpetuities by the grant of powers."    Al-

though there is a pertinent statute in New York, these cases contain a discussion of the common law as an essential part of the chain of reasoning. This is the law of Maryland as established by a line of decisions the last of which is *Gambrill* v. *Gambrill*, 122 Md. 563, where earlier cases are collected and reviewed. To the same effect are *Brown* v. *Columbia Finance & Trust Co.* 30 Ky. L. R. 110, 114, *Boyd's Estate*, 199 Penn. St. 487, 493. *Lawrence's Estate*, 136 Penn. St. 354, 364, and *Re Phillips*, 28 Ont. L. R. 94.

So far as there are intimations in our decisions, they support the same conclusion. It was said in *Stone* v. *Forbes*, 189 Mass. 163 at page 172: "If the gifts are treated, as they must be, as made in effect by the will of John M. Forbes [the donor] they are not too remote." In *Thompson* v. *Pew*, 214 Mass. 520 at page 523 are these words: "With the exception of a difference in the application of the rule against perpetuities founded upon the fact that the property to be given was to come from her husband and not from her except as the appointor, the testatrix had the same power of testamentary disposition over it as over her own." The view taken by Mr. Gray in his work on the Rule against Perpetuities, (3d ed.) §§ 514, 515, 521 to 526a is in harmony with *In re Powell's Trusts*, 39 L. J. Ch. 188, and the American decisions, and adverse to *Rous* v. *Jackson*, and the two other English cases following it hereinbefore cited. It is stated with clearness and the reasoning somewhat amplified in an article by him in 26 Harvard Law Review, 720. The opposite view is put forward with acuteness in 26 Harvard Law Review, 64, and 27 Harvard Law Review, 705.

The nature of the power created by will and conferred upon a donee to appoint property by will has been considered by this court in several different aspects. In *Crawford* v. *Langmaid*, 171 Mass. 309, the effort was made to treat the right to exercise such a power as property under the reach and apply statute. See R. L. c. 159, § 3, cl. 7. But it was held that although, if the power was exercised, the property appointed is deemed assets of the estate of the donee so as to be subject to his debts if needed, *Clapp* v. *Ingraham*, 126 Mass. 200, yet, since the nature of the estate of the remaindermen, in case the property is given over in default of appointment, is not affected until the power is exercised, there was no property right in the donee of the power. The rights of creditors again were considered in *Shattuck* v. *Burrage*, 229 Mass. 448.

There the donee of the power had made the appointment by his will and the question was whether such property could under the circumstances there disclosed be treated as "new assets" of his estate under R. L. c. 141, §§ 11, 18. It was said at page 451: "When a donor gives to another power of appointment over property, the donee of the power does not thereby become the owner of the property. The donee has no title whatever to the property. The power is simply a delegation to the donee of authority to act for the donor in the disposition of the latter's property. The appointee named by exercise of this delegated authority takes as recipient of the bounty of the donor and not as legatee of the donee." It was held in *Sewall* v. *Wilmer*, 132 Mass. 131, that the effect and validity of the instrument whereby the appointment was exercised was to be determined according to the law of the domicil of the donor and not of the donee. It there was said, page 136, "the property of which Mrs. Wilmer has a power of appointment is not her property, but the property of her father; and the instrument executed by her takes effect, not as a disposition of her own property, but as an appointment of property of her father under the power conferred upon her by his will. The domicil of the testator whose property is in question is therefore the domicil of her father." The question has arisen in reference to taxation. In *Emmons* v. *Shaw*, 171 Mass. 410, the point presented was whether, under the collateral inheritance tax law, the appointed property was to be regarded as that of the testamentary donor or of the donee. After a review of the authorities it was held that it passed as under the will of the donor and not of the donee. It there was said, page 412, " Generally speaking, what is done under a power of appointment is to be referred to the instrument by which the power is created, and operates as a disposition of the estate of the donor. [Citing a large number of authorities.] This is the ancient and established rule." In *Walker* v. *Treasurer & Receiver General*, 221 Mass. 600, are these words at page 602: "The power is a deputation of the donee to act for the donor in disposing of the donor's property. Personal property over which one has the power of appointment is not the property of the donee, but of the donor of the power." Again, in *Hill* v. *Treasurer & Receiver General*, 229 Mass. 474, the question arose whether, when the power of appointment had been exercised and the

property was seized by equity and applied to the payment of the debts of the donee of the power because otherwise they would have gone unpaid, the property so seized was subject to the inheritance tax as property passing under the will of the donee. In holding that it did not so pass, it was said: "It is settled that, the donee having exercised the power, the property appointed becomes in equity assets of his estate, so far as needed to pay his debts, to the exclusion of the persons appointed. . . . The property, however, was the property of the donor of the power. The donee had no title to it. He simply had the privilege, if he chose to exercise it, of disposing by will of property of the donor. He was the deputy of the donor in disposing of the latter's property. This was decided before the enactment of the succession tax law. Therefore, it was inevitable that it should be held in the application of the succession tax law that the assessment should be levied upon the theory that the property appointed was that of the donor, and not of the donee of the power." To the same effect are *Drake* v. *Attorney General,* 10 Cl. & Fin. 257, and *Commissioner of Stamp Duties* v. *Stephen,* [1904] A. C. 137, 140.

The nature of the estate, created was discussed in *Hooper* v. *Hooper,* 203 Mass. 50, 58, and it there was said: "It is to be noted that the donee of the power is not the owner of the estate. The interest of the appointee as finally determined is founded upon the deed of the donor." This statement was quoted with approval in *Harmon* v. *Weston,* 215 Mass. 242, 249, where it further was said: "It is from the donor of the power that the property comes to him who takes it, either through the exercise of that power by its donee or by reason of the latter's failure to exercise it." *O'Grady* v. *Wilmot,* [1916] 2 A. C. 231.

This review of our decisions demonstrates that in all other aspects where the question has arisen, the property appointed is regarded as the property of the donor and is treated as passing under his will, manifested by the words employed by the person upon whom he has conferred the power to express his testamentary design in specified particulars.

It seems difficult to say, in view of the reasoning upon which these decisions rest, that, when the rule against perpetuities is to be applied, the ground is to be shifted and the property is to be regarded as that of the donee and disposed of by his will.

There are numerous serious and well recognized limitations upon the interests of the donee of a power in the property over which he has the power of appointment. Allusion already has been made to some of these. His interest is far from an absolute one. No one can be an owner unless he can sell his property at will. Although a life tenant with power to appoint by will, failing which remainder goes to his children, enjoys many of the incidents of ownership, he lacks the fundamental one of power to sell a fee. Even though he has the power to appoint to his own estate, that does not go far enough. The liability of appointed property to debts of the appointer in case his own estate is insufficient is not an incident of ownership, but arises from a doctrine of equity. See, in this connection, *Tuell* v. *Hurley*, 206 Mass. 65, 68; and *Vinton* v. *Pratt*, 228 Mass. 468, 470. The life tenant who has an absolute power of appointment both by deed or by will may stand upon a different footing. But the donee of a power to appoint by will alone does not act as an owner of the appointed property. As was said by Chief Justice Baldwin in *Bartlett* v. *Sears*, 81 Conn. 34, 44: "One to whom a power of appointment is given by will stands to the testator substantially in the position of an agent toward his principal. An agent cannot do that which the principal cannot do." The essential nature of his act in exercising the power is that he is speaking for the original testator in directing the devolution of the property of the latter. The nature of his power is to express by his own will a disposition of the property of the donor who by the terms of his will adopted in advance these subsequently written words of the donee as disclosing his ultimate testamentary purpose.

Although there are instances of a complete new title springing into existence, as for example by the exercise of eminent domain or the sale of property to satisfy the lien for taxes, title arising from the exercise of a power is simply the transmission of an old title by virtue of the will of the donor of the power given momentarily a new manifestation through the phrase uttered by the donee of the power. Although the power of appointment by will may be unlimited, the title springs from the will of the donor and not from that of the donee. Different considerations might apply if the power was not only general but also capable of being exercised by deed and thus an absolute title be vested in the donee

during life. The making of a deed to the donee himself in exercise of his power might in that case be regarded as a vain form. But that is not the case at bar.

The donee in exercising the power is in effect writing the will of the donor respecting the appointed property. The donee in doing this in reason is bound by the same limitations of the law as bound the original testator. The donee can take advantage of facts of which the donor was ignorant because they were not in existence when he made his will. · But the donee cannot free himself from the rules of law which limited the power of the donor. The will of the donor and that of the donee so far as it exercises the power of the appointment in a sense together constitute the complete testamentary design of the donor respecting the donor's estate. The words used by the donee in exercising the power are to be construed and interpreted as to their meaning in the light of the facts as they are at the time the power is exercised. The will of the donor is projected forward to the time of the exercise of the power so as to receive the benefit of the facts which have appeared since his decease.

The ordinary statement of the rule against perpetuities is simple: "The rule is that executory limitations are void unless they take effect *ex necessitate* and in all possible contingencies within the period of a life or lives in being at the death of the testator and twenty-one years afterwards." *Hall* v. *Hall,* 123 Mass. 120, 124. *Sears* v. *Putnam,* 102 Mass. 5. *Brattle Square Church* v. *Grant,* 3 Gray, 142, 152.` *Gray* v. *Whittemore,* 192ₒMass. 367, 373. As applied to the exercise of a power of appointment the words of the rule are satisfied if it appears that in the light of facts as to relationship and longevity existent when the appointment is exercised, the estates created in truth will vest and take effect within the period limited by the rule, although this may not have been certain at the death of the donor of the power. Gray, Rule against Perpetuities, (3d ed.) §§ 523, 524. *Hooper* v. *Hooper,* 203 Mass. 50, 61.

There are strong practical considerations to the same end. As is pointed out by Mr. Gray in § 514 of his book already cited, unless the remoteness of an appointment depends on its distance from the creation and not from the exercise of the power "estates for life with powers of appointment by will might be created;

the tenants for life might appoint for life, with powers to the appointees to appoint by will; these appointees might, in their turn, appoint in like manner, and so an indefinite series of life estates might be created."

Both on principle and on authority our conclusion is that the remoteness of an appointment, made in the exercise of a power to appoint by will alone, so far as affected by the rule against perpetuities must be measured from the time of the creation and not the exercise of the power.

These are the particular facts of the case at bar to which these principles must be applied: Hannah F. Lee, a resident of Boston, died in 1865 and by her will created a trust to pay the income to her granddaughter, Julia Bryant, a minor, then unmarried, during her life, "and on her death to transfer and convey the same in fee to such persons and on such terms as said Julia by her last Will and Testament, executed after her majority, may direct and appoint, and in default of such Will . . . then to her issue, if any, surviving her." Julia Bryant in March, 1867, married Charles J. Paine, born in 1833, had four sons and three daughters, and died in September, 1901, leaving her husband and all her children surviving. Her son Sumner died in 1904, leaving a widow, Salome B., but no issue, and an adopted daughter, Margaret. The husband, Charles J. Paine, died in 1916. Mrs. Paine left a will wherein she exercised the power of appointment given by Mrs. Lee. But she left a large estate of her own and in her will made no distinction between her own and the property appointed.

Treating first the will of Mrs. Paine as relating solely to the appointed property, some of its provisions would not be too remote and others would be too remote under the rule against perpetuities. By her will she gave $525,000 to trustees to pay the income to her husband during his life and after his death "to hold the same for the benefit of my children." With respect to this fund at the termination of the interest of the husband, Mrs. Paine made different dispositions for the benefit of her several children. It is necessary in this connection to consider only the provisions for the benefit of her sons. The provision for the benefit of three of her sons, excluding a fourth son, Sumner, was that each should receive an equal proportionate share in the income after the death of their father "until he shall have attained

the age of twenty five years, and on his attaining the age of twenty five years, to transfer and convey his equal and proportionate share of the trust fund to such son in fee, free of these trusts." Since each of these sons was old enough at the decease of his mother to be certain to reach the age of twenty-five years within twenty-one years thereafter and, if not before, within twenty-one years from the death of Charles J. Paine, the life tenant, both lives in being at the death of the donor of the power, Mrs. Lee, and they have now reached that age, the appointment to them was good and the share of each has become vested. The final residue of the estate being left upon the same trusts, the share of it given to these three sons, for the same reasons has become vested.

The provision for the son Sumner was in substance that after the death of the husband one equal and proportionate share of the estate, being in fact $75,000, be set apart as a separate fund, the income thereof to be paid to him during his life and at his decease the income of $25,000 of the fund to be paid to his adopted daughter Margaret and the remainder be paid to the issue, if any, of Sumner then living and in default of issue to add to the shares of the other children. The gift of income to Sumner and to his adopted daughter Margaret was vested, although the enjoyment of the latter was postponed until his decease. This appointment was good, since the rule against perpetuities does not apply to such vested interests. *Seaver* v. *Fitzgerald,* 141 Mass. 401. *Gray* v. *Whittemore,* 192 Mass. 367, 374. The gift over of the remainder of the share set apart for Sumner was void for remoteness. He had no issue. It was not certain that he might not live until more than twenty-one years after the decease of both his father and his mother, and then leave issue. *Hills* v. *Simonds,* 125 Mass. 536, 539. *Stone* v. *Bradlee,* 183 Mass. 165, 171.

Numerous pecuniary legacies are given outright, without being deferred as to payment or enjoyment and free from any trust, by clauses Third to Thirteenth both inclusive. Plainly these can be upheld as appointments under the power.

An annuity was given to Mrs. Koopman with a power to appoint by will the sum of three thousand dollars. Manifestly this sum of three thousand dollars might not vest within the required period from the decease of Mrs. Lee.

It is clear, however, from the statement of the amount of

property to be appointed and the amount of Mrs. Paine's own estate, that the gifts to the three sons, excluding Sumner, which are not void, and the pecuniary legacies given by clauses Third to Thirteenth of the will of Mrs. Paine, both inclusive, which validly can be made out of the property to be appointed, will exhaust or more than exhaust that property. It was the obvious intent of Mrs. Paine that there should be no intestacy either as to the appointed property or her own estate. It is the fundamental rule in the interpretation of wills that the purpose of the testator shall be effectuated unless contrary to some positive rule of law. Where the testator deals with goods and estates, including those over which he has a power of appointment as well as those which belong to himself, as one mass, and clearly expresses a design that there shall be no intestacy as to any part, as matter of construction that testamentary purpose should be executed by applying those portions of the will, which can operate according to the rules of law upon the property to be appointed, as disposing of that property and the other provisions of the will as disposing of his own property. *Stone* v. *Forbes*, 189 Mass. 163, 170. Following this rule of construction there will be no intestate property either of her own or of that over which she has power of appointment, and all the provisions of the will of Mrs. Paine can be carried into effect. It is unnecessary to determine whether the same result could be reached by the operation of the doctrine of marshalling of assets, *Carter* v. *Tanners Leather Co.* 196 Mass. 163, 166, *Tod* v. *Mitchell*, 228 Mass. 541, or the doctrine of election, *Watson* v. *Watson*, 128 Mass. 152, *Noyes* v. *Noyes*, 224 Mass. 125, 134, *In re Bradshaw*, [1902] 1 Ch. 436, 447.

The provision of the residuary clause to the effect that the residuum shall be held by the trustees "on the same trusts and for the same purposes as are set forth in the second clause of this Will," as matter of construction does not give the income of a second $25,000 to Margaret, the daughter of Sumner. It seems clear from the terms of clause second that the total benefaction to her was intended to be limited to the income of that sum.

*Decree accordingly.*