ELEANORA R. SEARS *vs.* WILLIAM A. COOLIDGE & others, trustees, & others
(and a companion case[1]).

Essex.     January 9, 10, 1952. — October 31, 1952.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Rule against Perpetuities.    Power.*

A remainder interest in trust property limited upon two alternative contingencies, one of which must occur within the period of the rule against perpetuities and the other of which may not, is valid under the rule if the contingency which is bound to occur within the period actually occurs.   [342–343]

Remainder interests created by a provision in a deed of trust for distribution of the trust principal "upon the attainment of fifty years by the youngest surviving grandchild of . . . [the settlor] who shall be living at . . . [the settlor's] death" were not invalidated by the rule against perpetuities, even though, besides the grandchildren of the settlor living at the creation of the trust, grandchildren of his who might have been born thereafter were included in interpreting the phrase "the youngest surviving grandchild of . . . [his] who shall be living at . . . [his] death," where he reserved by another provision of the deed of trust a power to alter the terms of the trust having the attributes of a special power to appoint the trust principal by deed and it appeared at his death that he had not exercised the power and that no further grandchildren of his had been born since the creation of the trust: in the circumstances the validity of the remainder interests was to be determined in the light of the facts existent at his death, when the power ceased to be exercisable.

TWO PETITIONS, filed in the Probate Court for the county of Essex on June 29, 1950, and August 7, 1950, respectively. The cases were heard by *Costello*, J.

---

[1] The companion case is Fiduciary Trust Company, administrator, *vs.* William A. Coolidge & others, trustees, & others.

In this court the cases were argued in January, 1952, before *Qua, C.J., Ronan, Wilkins, Spalding, & Williams,* JJ., and later were submitted on briefs to all the Justices.

*George A. Hopkins* of New York & *Austin Broadhurst,* (*Edward Norwalk* of New York, *Joseph B. Ely & Norman T. Byrnes* with them,) for Eleonora R. Sears.

*Warren F. Farr,* (*Oscar M. Shaw* with him,) for William A. Coolidge and others, trustees; *Melville F. Weston,* (*Richard F. Barrett* with him,) for Mary N. Morgan and others; *Roy M. Robinson,* for T. Jefferson Newbold and others, & *Phillips Ketchum,* for Francis L. Higginson and others, with them.

*Richard H. Wiswall,* (*Charles Y. Wadsworth & Gerald T. O'Hara* with him,) for Fiduciary Trust Company, administrator of the estate of Frederick R. Sears.

*Alfred P. Lowell,* (*Francis S. Moulton* with him,) for Charles F. Adams and others, trustees.

*W. Warner Lang,* for Ellen Clarke, submitted a brief.

*Robert S. Sylvester & John L. Symonds,* for Fiduciary Trust Company, administrator of the estate of Norma Sears, and others, submitted a brief.

*John E. Rogerson & William N. Swift,* for Alexander Wheeler, special administrator, submitted a brief.

*John H. O'Neil,* guardian ad litem, submitted a brief.

WILKINS, J. These two petitions under G. L. (Ter. Ed.) c. 231A seek binding declarations as to the validity of the provisions relating to income and to gifts of principal by way of remainder in a deed of trust executed by Thomas Jefferson Coolidge, late of Manchester, under date of February 12, 1913. The settlor died on November 17, 1920. In each case a decree was entered declaring that the life interests are valid; but that the gifts over of principal are invalid and void, and upon the termination of the trust the personal representatives of the settlor's estate are to receive the principal and any unpaid accumulated income. The petitioners, the trustees, and numerous other persons interested in the trust or in the settlor's estate appealed.

The net income of the trust was payable one third semi-

annually to "such of the issue of my deceased son as shall be living at the time of each such semi-annual payment," and two thirds, divided into three parts payable semi-annually, one part each to Marian A. Sargent and to Sarah L. Newbold and after their death to their respective issue, and one to the living issue of Eleonora R. Sears, who were the petitioner Eleonora R. Sears and Frederick R. Sears.

The appeals relating to the life interests have been "waived and withdrawn." We are now concerned only with the decrees in so far as they affect the remainder interests. Whenever we refer to the appellants, we shall mean all or some of those who are seeking to establish the validity of the remainder interests. The facts are undisputed and, for the most part, are embodied in a written stipulation in the Probate Court. The evidence is reported.

The fundamental issue is whether the remainder interests violate the rule against perpetuities. Paragraph 5 of the trust instrument provides that the capital of the trust is to be distributed "in equal shares to and among my issue living" at the time of distribution. Distribution is to take place upon "whichever shall first happen" of two events: (1) "the death of the last survivor of those of my children, grandchildren and great grandchildren who shall be living at my death"; or (2) "the attainment of fifty years by the youngest surviving grandchild of mine who shall be living at my death."[1] The second event first happened. William A. Coolidge, the youngest grandchild living at the settlor's death, attained the age of fifty years on October 21, 1951.

Where a trust instrument contains two alternative conditions, of which the first might be too remote and the second, which actually occurs, is not too remote, the rule

---

[1] The full language of paragraph 5 is: "Upon the death of the last survivor of those of my children, grandchildren and great grandchildren who shall be living at my death, or upon the attainment of fifty years by the youngest surviving grandchild of mine who shall be living at my death, whichever shall first happen, the capital of the trust fund, as then existing, shall be conveyed, transferred and paid over in equal shares to and among my issue living at that time, such issue taking per stirpes and not per capita, and thereupon the trusts established by this instrument shall cease and determine." The same deed of trust was the subject of the decision in *Dexter* v. *Treasurer & Receiver General*, 243 Mass. 523.

is not violated. *Jackson* v. *Phillips*, 14 Allen, 539, 572–573. *Stone* v. *Bradlee*, 183 Mass. 165, 171–172. *Gray* v. *Whittemore*, 192 Mass. 367, 372. *Springfield Safe Deposit & Trust Co.* v. *Ireland*, 268 Mass. 62, 67–68. Accordingly, the appellants contend that the attainment by the youngest grandchild of the age of fifty years was certain to occur within the period required by the rule, and that as matter of construction the reference in paragraph 5 to "the youngest surviving grandchild of mine who shall be living at my death" must be read as if "grandchild" were qualified by "now living" or similar words. In support are adduced various facts in the settlor's family situation obvious to him when he executed the deed of trust. He was then eighty-one years of age and had been a widower for twelve years. At that time he had two living children, Marian A. Sargent, who was aged fifty-nine and had been a widow for twenty years, and Sarah L. Newbold, who was then fifty-five years of age. During the preceding year there had died two of his children, T. Jefferson Coolidge and Eleonora R. Sears. The settlor then had ten living grandchildren. Four were the minor sons of his deceased son. Two were the children of his deceased daughter, one being the petitioner, Eleonora R. Sears, and the other Frederick R. Sears, the administrator of whose estate is the petitioner Fiduciary Trust Company. One was the child of Marian A. Sargent, and three were the children of Sarah L. Newbold. The oldest grandchild was thirty-five and the youngest was seven. No further grandchildren were born in the settlor's lifetime, but the youngest of the ten died before the settlor.

The appellees argue, on the other hand, that it is not permissible thus to qualify the clause in paragraph 5, and for present purposes we accept their position on this point, and assume that the phrase "the youngest surviving grandchild of mine who shall be living at my death" is not to be interpreted as excluding grandchildren who might be born after the trust instrument was created.

The appellants make the contention that the settlor in the trust deed reserved a power which was at least equiva-

lent to a special power of appointment, and that the validity of the remainders must in any event be determined in the light of the facts existing at his death when it was known that his only grandchildren had been lives in being at the time the trust was created. This has been referred to in the arguments as "a second look."

Paragraph 9 reads: "I reserve to myself power at all times to make any additions to the trust property, to change and alter any or all of the trusts herein set forth and to declare new uses and trusts of the property in any way or manner except such as will vest in myself the trust property or any beneficial interest therein, to name and appoint any other persons than those above specified or hereafter appointed as beneficiaries, whether by way of addition or substitution, and to appoint other trustees instead of or in addition to any or all of those above named. Every such change, alteration, nomination and appointment shall be made by my deed and shall take effect immediately upon the delivery thereof to any person who shall at the time be acting as a trustee under the provisions of these presents."

The point, which, so far as appears, has not been pressed upon an appellate court before, is based upon the analogy of *Minot* v. *Paine,* 230 Mass. 514. The theory is that at the settlor's death the expiration of the power to divert the property from the takers in default was the same in effect as an appointment of the remainders by the settlor's will.

The reserved power is, at the very least, akin to a power of appointment. *National Shawmut Bank* v. *Joy,* 315 Mass. 457, 474. Restatement: Property, § 318, comment i. See *Saltonstall* v. *Treasurer & Receiver General,* 256 Mass. 519, 524. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 294 Mass. 551, 554. *State Street Trust Co.* v. *Crocker,* 306 Mass. 257, 262. And, for present purposes, we treat it as having attributes of a special power to appoint by deed.

In *Minot* v. *Paine* the power to appoint was, in fact, exercised, and there was presented a question as to the effect

of the language used by the donee of the power, who had become, in law, the agent of the donor for the purpose. At page 522, it was said: "The donee in exercising the power is in effect writing the will of the donor respecting the appointed property. . . . The words used by the donee in exercising the power are to be construed and interpreted as to their meaning in the light of the facts as they are at the time the power is exercised. The will of the donor is projected forward to the time of the exercise of the power so as to receive the benefit of the facts which have appeared since his decease. . . . As applied to the exercise of a power of appointment the words of the rule are satisfied if it appears that in the light of facts as to relationship and longevity existent when the appointment is exercised, the estates created in truth will vest and take effect within the period limited by the rule, although this may not have been certain at the death of the donor of the power."

In the present instance, no appointment having been made, there were no words expressed by the holder of the reserved power to be read back into the deed of trust. That fact, however, should not be decisive. In every case where there is a power, whether it be exercised or not, there is the common feature that until the opportunity for its exercise ceases to exist, there will persist uncertainty as to the ultimate disposition of the property. Until then nothing final can be known as to what are the provisions for the vesting of the future interests, and it is with such vesting the policy of the rule is concerned. *Proprietors of the Church in Brattle Square* v. *Grant,* 3 Gray, 142, 152–153. *Jackson* v. *Phillips,* 14 Allen, 539, 572. *Sears* v. *Putnam,* 102 Mass. 5, 6–7. *Hall* v. *Hall,* 123 Mass. 120, 124. *Gray* v. *Whittemore,* 192 Mass. 367, 373. *Minot* v. *Paine,* 230 Mass. 514, 522. *Springfield Safe Deposit & Trust Co.* v. *Ireland,* 268 Mass. 62, 66. *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 622–623. See *Minot* v. *Treasurer & Receiver General,* 207 Mass. 588, 592–593; *Burnham* v. *Treasurer & Receiver General,* 212 Mass. 165, 167.

Since it is permissible to make use of the circumstances

known when a power, which is special or testamentary, is exercised to determine validity under the rule, it seems reasonable to afford the same opportunity in cases where such a power is not exercised. In the case of the trust instrument under consideration until it became too late for the settlor to exercise the reserved power no one could tell what might be the ultimate disposition of the trust property. As long as there remained a right to change, alter, and make new appointments, no instructions to the trustees or declaratory decree would ordinarily have been given as to the validity of the settlor's limitations. See *National Shawmut Bank* v. *Morey*, 320 Mass. 492, 497–500; *Young* v. *Jackson*, 321 Mass. 1, 7; *Burn* v. *McAllister*, 321 Mass. 660, 662. Upon his death it could be learned for the first time what definitely were to be the terms of the trust. It then could be seen for the first time that there was to be no failure to vest within the period limited by the rule. No further grandchildren had been born. In these precise circumstances there is no compelling decision which prevents taking advantage of facts known at the moment when the power ceased to be exercisable. American Law of Property, § 24.36. We are unwilling to apply the rule so as to invalidate the trust instrument.

The appellees strongly urge that the doctrine of a "second look" has no place in reading the original limitations in default of appointment, which were capable of examination when created, and which should retain the same meaning throughout. They argue that its adoption would be a nullification of the rule "that executory limitations are void unless they take effect ex necessitate and in all possible contingencies" within the prescribed period. *Hall* v. *Hall*, 123 Mass. 120, 124. But this rule, while recognized, was assuaged as to the exercise of a power of appointment in *Minot* v. *Paine*, 230 Mass. 514, 522. It was there deemed wise not to apply unmodified a remorseless technical principle to a case which it did not fit. That principle seems equally inappropriate here.

The decrees are reversed and the causes are remanded to

the Probate Court for the entry of decrees in accordance with this opinion. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*