FREDERIC STONE & another, trustees, *vs.* JOSIAH BRADLEE & others.

Suffolk.  January 21, 1903. — March 31, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Devise*, Construction.  *Perpetuities.*

Before the enactment of St. 1888, c. 273, (R. L. c. 134, § 5,) a testator, having six children, after giving one sixth part of the residue of his estate to trustees, to pay the income to one of his daughters during her life, provided as follows: "And upon the decease of my said daughter, if she leaves children, such income shall be paid to such children, in equal shares, during their respective lives, and as such children shall successively decease, said sixth part of the residue and remainder of my estate, shall be distributed to and among their lineal descendants, in fee simple, according to the right of representation. But if my said daughter shall die without children or lineal descendants, I direct said trustees to dispose of said sixth part, of the residue and remainder of my estate, among my surviving children," in a manner stated. The daughter died without issue. *Held*, that in the light of circumstances and of other provisions of the will stated by the court, the words "shall die without children or lineal descendants" referred to a definite failure of issue at the death of the daughter, so that she took only a life interest, and not a fee tail with an absolute estate in the personalty. *Held, also*, that the words "surviving children" in the last clause above quoted meant those surviving at the testator's death, and therefore that their interests in the remainders, limited to take effect in default of issue, became vested immediately upon his death. *Held, also*, that the fact, that the limitation over to the lineal descendants of the testator's grandchildren, in the alternative of his daughter's leaving children, was void under the rule against perpetuities, did not affect the validity of the alternative provision in case his daughter died without children, the contingency which happened.

A provision of a will gave to a son of the testator the income for life of one sixth of the residue of the testator's estate, and gave the son's widow the income for life of one third of the fund after the son's decease, with remainder in fee to his children. Another later paragraph of the will, describing the manner in which the testator wished his estate to be apportioned among his six children, provided, as to the share of this son, that it should go to him "in trust for his life, with

remainder in fee simple to his children." *Held*, that the paragraph containing the provision last quoted was intended to be merely declaratory of the previously expressed intention, and that the provision in regard to this son was intended to be the same as, and to adopt all provisions of, the trust for him, including the provision for his widow.

A testator gave to one of his daughters the income for life of a certain fund, payable quarterly, with a provision that "if such income shall be, at any time more than she needs, or shall think it necessary to receive, such surplus income shall be added to the principal of the trust estate." This daughter having died some time after a quarterly payment, it was *held*, that, in the absence of anything to show that she thought the income more than she needed, it all belonged to her, and under R. L. c. 141, § 25, the executor under her will was entitled to the income which accrued between the time of the last quarterly payment and her death.

BILL IN EQUITY, filed August 7, 1901, by the trustees under the will of Josiah Bradlee, for instructions as to the distribution of the fund given in trust for the benefit of Lucy Hall Shober during her life, she having died on May 18, 1901.

The case came on to be heard before *Loring, J.*, who made an interlocutory decree, and being of opinion that the matter ought to be determined by the full court before further proceedings reported the case for that purpose.

By the report, it appeared, that Josiah Bradlee, formerly of Boston, died on January 5, 1860, and that his will, which was allowed on January 30, 1860, contained among others the following provisions:

" 10. I give and devise to my sons, Frederic Hall and James Bowdoin, their heirs, executors, administrators and assigns forever, and to the survivor, his heirs, executors, administrators and assigns forever, one sixth part of said residue and remainder, upon the following trust, viz in trust to hold and manage the same, and the nett income thereof to pay quarterly, to my son Henry Bradlee, during his life, on his personal receipt, or written order only; or said trustees may at their discretion, apply said nett income to the support and maintenance of said Henry, and his family, and to the education of his children, during his life. And I direct that said income shall be, in no wise, liable for the debts of said Henry. And on this further trust, in case said Henry's wife shall survive him, said trustees, upon his decease, shall set apart one third part, of the sixth part of said residue and remainder herein devised and bequeathed to them & the nett income of such third part, they shall pay from time to time,

to the widow of said Henry, during her life, on her personal receipt, or written order, only, without the control or interference of her husband, in case she shall marry again, or liability for his debts. And the residue of said sixth part of said residue & remainder of my estate, said trustees shall pay, deliver over, and convey to the children of said Henry, or their lineal descendants, in fee simple; and in like manner upon the decease of the widow of said Henry, they shall pay, deliver over, and convey in fee, to the children of said Henry, or their lineal descendants, the property and estate herein directed to be appropriated to the use of the widow of said Henry, during her life. And in case said Henry shall leave no children or lineal descendants of children, all the property & estate herein devised to said trustees, shall be distributed as follows; viz one part thereof to each of my sons, Frederic Hall and James Bowdoin in fee, simple, and one part to each of my daughters, then living, during the life of each, to be held by said trustees, upon the trusts hereinafter declared, reserving however, to the widow of said Henry, the annuity above provided to be paid to her, during her life."

"12. I give and devise to said Frederic Hall & James Bowdoin, their heirs, executors, administrators & assigns, and to the survivor, his heirs, executors, administrators and assigns, one other sixth part of the said residue and remainder of my estate, upon the following trust, viz, to hold and manage said sixth part, and the nett income thereof, to pay quarterly to my daughter Lucy Hall Shober, during her life, on her personal receipt or written order only, and (in case she shall marry) without the control, or interference of her husband or liability for his debts; and if such income shall be, at any time more than she needs, or shall think it necessary to receive, such surplus income shall be added to the principal of the trust estate.

"And upon the decease of my said daughter, if she leaves children, such income shall be paid to such children, in equal shares, during their respective lives, and as such children shall successively decease, said sixth part of the residue and remainder of my estate, shall be distributed to and among their lineal descendants, in fee simple, according to the right of representation.

"But if my said daughter shall die without children or lineal descendants, I direct said trustees to dispose of said sixth part,

of the residue and remainder of my estate, among my surviving children, as follows, viz said Frederic Hall and James Bowdoin shall each take one part thereof, in fee simple; and said trustees shall hold one part, for my son Henry, and one part for each of my surviving daughters, for the use of my son and daughters, during their respective lives, upon the trusts declared in this will, for my said son and daughters, respectively."

The fourteenth paragraph of the will, describing the manner in which the testator wished his estate to be apportioned among his six children, is quoted in full by the court.

*F. Brewster*, for the plaintiffs, filed no brief.

*A. D. Hill*, (*J. F. Tyler* with him,) for the trustees under the will of James Bowdoin Bradlee and others.

*John Chipman Gray*, (*Roland Gray* with him,) for the executor under the will of Lucy Hall Shober.

*H. E. Warner*, for R. J. Dodd.

*H. E. Bolles*, ( *O. O. Partridge* with him,) for Maude Bradlee, executrix, and Edward Abbot Bradlee.

*H. Wheeler*, for Ellen W. Duryea.

*E. G. Loomis*, for William Odlin, trustee.

*A. Hemenway*, for Elizabeth T. Bradlee.

*H. W. Bragg*, for Edward N. Fenno and Gerald Wyman, trustees.

*J. L. Stackpole*, for the children and grandchildren of Frederic Hall Bradlee.

KNOWLTON, C. J.   By the twelfth clause of the will of Josiah Bradlee, one sixth part of the residue of his estate, after making certain payments, was to go to trustees, whose successors are the present plaintiffs, to be held in trust, to pay the net income quarterly to his daughter Lucy Hall Shober during her life.   A further provision is as follows: " Upon the decease of my said daughter, if she leaves children, such income shall be paid to such children, in equal shares, during their respective lives, and as such children shall successively decease, said sixth part of the residue and remainder of my estate, shall be distributed to and among their lineal descendants, in fee simple, according to the right of representation.

" But if my said daughter shall die without children or lineal descendants, I direct said trustees to dispose of said sixth part, of

the residue and remainder of my estate, among my surviving children, as follows, viz said Frederic Hall and James Bowdoin shall each take one part thereof, in fee simple; and said trustees shall hold one part, for my son Henry, and one part for each of my surviving daughters, for the use of my son and daughters, during their respective lives, upon the trusts declared in this will, for my said son and daughters, respectively."

The testator had three sons and three daughters. One sixth part of the residue is given in like manner to each of his other children, like trusts being created for the shares given to the other daughters, and a similar, but not identical trust for the share given to his son Henry, while the shares of his sons Frederic Hall and James Bowdoin were given to them absolutely, without the intervention of trustees. All of these children of the testator are now deceased, and none of the daughters ever had children. All the sons left issue who still survive. The share in question in this case is the one sixth part which was held for Mrs. Shober, who was the last of the family to die.

The first question is, What is the nature of the estate which Mrs. Shober took? That depends upon the time when, by the terms of the will, her estate would end and the remainder vest in possession. Apart from qualifying provisions, if the event which would determine her estate was an indefinite failure of issue at any time after her death, she would take an estate tail in the real estate, and an absolute estate in the personal property; for a title in the nature of an estate tail in personal property is greater than a life estate, and the law treats it as an absolute ownership. *Goddard* v. *Whitney,* 140 Mass. 92, 101. If, on the other hand, she had only a life estate, and if the event which was to give the remainder to her brothers and sisters was a definite failure of issue at her death, that event has occurred, and the last part of the above quoted provision is applicable. While, apart from recent statutes, the words "die without issue" mean an indefinite failure of issue if there is nothing else in the will to throw light on their meaning, that meaning is not given them if it seems inconsistent with the purpose which the testator has indicated in other parts of his will. Indeed, so often has this meaning done violence to the real intention of testators that both in this State and in England statutes have been passed providing

that such language shall be held to relate to conditions existing at the time of the death of the first taker. R. L. c. 134, § 5. St. 7 Wm. IV. & 1 Vict. c. 26, § 29. Slight indications have often been held to be enough to show that a definite failure of issue is meant. The question always is, What was the intention of the testator? *Whitcomb* v. *Taylor*, 122 Mass. 243, 249. *Richardson* v. *Noyes*, 2 Mass. 56, 63. *Hall* v. *Priest*, 6 Gray, 18, 22. *Sewall* v. *Roberts*, 115 Mass. 262, 274. *Pratt* v. *Alger*, 136 Mass. 550, 551. *Wilson* v. *O'Connell*, 147 Mass. 17, 19. *Welch* v. *Brimmer*, 169 Mass. 204, 211. *Barney* v. *Arnold*, 15 R. I. 78, 80. *Pells* v. *Brown*, 1 Cro. Jac. 590. *Trotter* v. *Oswald*, 1 Cox, 317. *Porter* v. *Bradley*, 3 T. R. 143.

In this will we find indications that a definite failure of issue was intended. The gift over is expressly in the alternative, and the first alternative is " upon the decease of my said daughter, if she leaves children," and the second alternative is, " if my said daughter shall die without children or lineal descendants." If children alone were referred to in each alternative, there would be no possibility of doubt that the time which would determine the existence or failure of issue would be at the death of Mrs. Shober. The first alternative plainly relates to the time of her death, and the antithetical use of the two alternatives, in reference to the same subject, indicates that the second alternative relates to the same time. The probability of this intention is emphasized by the fact that the youngest of the testator's married daughters was fifty-three years of age when the will was made, and their having children could not have been contemplated by the testator otherwise than as a remote possibility.

Another fact is important, namely, that the gift over after the death of Mrs. Shober is, as to the testator's other daughters, a life estate only, and the improbability that such a life estate would ever take effect after an indefinite failure of issue tends to show that a definite failure was meant. *Ide* v. *Ide*, 5 Mass. 500, 503. *Drury* v. *Negro Grace*, 2 H. & J. 356, 359.

In this connection the fourteenth clause of the will becomes important. It is as follows : " It is my will, that my daughters shall take no part of my estate, in fee simple (except the legacies of twenty thousand dollars, to Mrs. Dodd & Mrs. Shober) but that at the decease of the last survivor of them, the whole of the

legacies in trust in this will, for the benefit of my said daughters, which shall then be in the hands of said trustees, except such parts thereof (if any) which the children or lineal descendants of my daughters, may be entitled to, shall be equally divided between my sons, the shares of my two eldest sons in fee simple, and the share of said Henry in trust, for his life, with remainder in fee simple, to his children." This provision, which we consider an explanation of the testator's previously stated meaning, is inconsistent with the creation of an estate tail in the daughters, and is a plain indication that the rights of remaindermen are to be determined as of the time of the daughters' deaths.

The next question is, What is meant by the words " my surviving children " in the last paragraph of the twelfth clause. The testator defined them when he mentioned his three sons by name and his daughters generally in providing that two of the sons should have their shares in fee simple, and the third son and his surviving daughters, through trustees. Construing the twelfth clause in connection with the fourteenth clause, it is difficult, in reference to the sons who are named, to interpret the words " surviving children " as meaning anything else than children surviving at the time of his death, and if that is their meaning in reference to his sons, it is the same in reference to the daughters also. *Minot* v. *Taylor*, 129 Mass. 160. *Weston* v. *Weston*, 125 Mass. 268, 270. That surviving children means those surviving at the testator's death is fully shown by the fact that in the fourteenth clause of the will, after the death of the survivor of his daughters, her share is given to his sons by name. There is certainly no good reason for believing that the word " surviving " is used in different senses in its application to the daughters and its application to the sons. We therefore hold that the interests of the testator's children in the contingent remainders, limited to take effect in default of issue, became vested immediately upon his death.

That part of the previous limitation which gives the shares to the lineal descendants of the testator's grandchildren in case Mrs. Shober should decease leaving children, is void under the rule against perpetuities; but as the limitation in the following paragraph is an alternative one and not dependent upon the first, it makes no difference with the rights of the parties under present

conditions. *Jackson* v. *Phillips*, 14 Allen, 539, 572. *Seaver* v. *Fitzgerald*, 141 Mass. 401, 403.

Mrs. Shober was the survivor of the three daughters, and as the limitation over to daughters was only for their lives, the shares of the other two lapsed by their death in her lifetime. The three sons are, therefore, the only takers. Frederic Hall Bradlee and James Bowdoin Bradlee were to take their shares in fee simple after the expiration of the life estate. The share of Henry was to be for his use during his life, upon the trusts declared in this will. We are of opinion that this provision brings this share under the trust created for him in the tenth clause, which gives him the income for life and gives his widow the income for life of one third of the fund after his decease, and gives the residue and remainder in fee to his children. This is the construction which has been put upon the will, with the consent of all parties, in the distribution of the shares on the decease of the other two daughters. The fourteenth clause is in conformity with this construction, unless it should be held that the last provision in it, which gives the share of Henry "in trust, for his life, with remainder in fee simple, to his children," was intended to change the effect of the twelfth clause in case his widow survived the last of his sisters, and to cut her off from the life estate in one third which would be given her by the tenth clause. The meaning in this particular is doubtful, but we are of opinion that this clause was intended to be merely declaratory of the previously expressed intention, and to make it plain that the limitations over were to take effect on the death of the daughters, and that the daughters were in no event to have any other than life estates. We think that the provision in this clause for Henry was intended to be the same as in the twelfth clause, and to adopt all the provisions of the trust for him, created in the tenth clause.

We think it plain that the executor under Mrs. Shober's will is entitled to the income which accrued between the time of the last quarterly payment and Mrs. Shober's death. The gift of income to her was absolute, unless it should be more than she should think it necessary to receive. In the absence of anything to show that she thought it more than she needed, it all belongs to her. R. L. c. 141, § 25. *Williams* v. *Bradley*, 3 Allen, 270.

It follows that the interlocutory decree should be affirmed in all particulars, except as to the one third part which is to be held under the trust for Henry Bradlee.    That is to be disposed of according to the provisions of the tenth clause in the will, subject to a determination hereafter of the rights of claimants under Dudley H. Bradlee.

*So ordered.*