LYONS *v.* COTHARIN.

1. WILLS—CONSTRUCTION—CONTINGENT INTEREST—INTENT.

   Where a devise to two sons, subject to a life estate in their mother, provided that, in case of the death of either without issue, then the estate devised should go to and be the estate and property of the survivor, *held,* to be the intent of the testator that the contingency of issue or no issue was to apply during the life of the devisees; the words and context not importing an indefinite failure of issue.

2. DEEDS—CONTINGENT INTEREST—INTEREST CONVEYED.

   A deed from one brother to the other of an undivided one-half in lands devised to them with the provision that, in case of the death of either without issue, then the estate devised should go to and be the estate and property of the survivor, did not convey to the grantee the interest of the grantor in the half devised to the grantee contingent upon the grantee's dying without issue during the lifetime of the grantor.

3. REFORMATION OF INSTRUMENTS — DEEDS — MUTUAL MISTAKE — EVIDENCE.

   To warrant the reformation of a deed because of a mutual mistake, the testimony that a mistake was made must be convincing.

Appeal from Genesee; Collingwood, J., presiding. Submitted January 7, 1919. (Docket No. 7.) Decided April 3, 1919.

Bill by Johannah Lyons and others against Arthur Cotharin, administrator of the estate of Dennis Lyons, deceased, and others for the construction of a will and deed. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*George W. Cook,* for plaintiffs.

*Carton, Roberts & Stewart,* for defendants.

OSTRANDER, J.   Cornelius Lyons, a resident of Genesee county, Michigan, died, testate, in March, 1872. May 6, 1872, his will was admitted to probate.   He gave to his wife, in lieu of dower and other rights, for her life, the use of a third of all his real and personal estate, the clause of the will in which this provision is made concluding with the words,—

"and at her death, the same shall go to and belong to my sons, Dennis Lyons and Daniel Lyons."

The second and third clauses of his will read as follows:

"2nd. I give, devise and bequeath to my said sons, Dennis Lyons and Daniel Lyons all of my real and personal estate in fee simple, subject to the above devise in favor of my wife, and subject to the condition that my other children, Mary, Margaret, Johanna and Julia, Patrick and John Lyons, shall, until they arrive, respectively, at the age of twenty-one years shall be supported and taken care of by my said sons, Dennis and Daniel Lyons; they keeping said family together, and said younger children rendering such assistance about the premises and to the said Dennis and Daniel as may be in their power until they respectively attain the age of twenty-one years, said real and personal estate to be held by said Dennis and Daniel Lyons forever, subject to the conditions above mentioned, and subject to the further condition that said younger children shall be properly cared for and educated.

"3rd. In case of the death of either of my said sons, Dennis or Daniel, without issue, then the estate hereby bequeathed and devised shall go to and be the estate and property of the survivor of them, subject to the conditions aforesaid."

The real estate devised was a farm of 80 acres described as the southwest quarter of the southeast quarter of section 33, town 8 north, range 7 east, and the northwest quarter of the northeast fractional quarter of section 4, town 7 north, of range 7 east.   It is to be

inferred, perhaps it ought to be conclusively found upon the whole record, that the widow, with more or less help from the children, and especially with the help of Daniel, operated the farm, maintained a home there, and that the conditions found in the second clause of the will were performed. There is no question here of any failure to perform them. In 1895, Bridget died. Meantime, two other parcels of land had been purchased and title taken in the name of Dennis and Daniel. Dennis, the eldest child, appears to have had little, if anything, to do with the care and management of the property. In February, 1911, Dennis filed his bill in the circuit court for the county of Genesee, in chancery, against Daniel, in which he charges, among other things, that after the death of his mother in 1895 Daniel took full charge and control of the home farm and the 40 acres purchased in the name of Dennis and Daniel and received the income and that at the time of filing the bill he had refused to make any account of the income to Dennis, or to divide the proceeds except by furnishing a small annual contribution of potatoes and flour. He prays for an accounting. Daniel answered the bill. While this suit was pending, the brothers reached an agreement. It is established that in May, 1911, Dennis delivered to Daniel a deed. Daniel borrowed from defendant Bartlett $3,000, executing his note and a mortgage upon the premises as security for the payment of it, Bartlett's check for $3,000, payable to the order of Daniel, was delivered to Daniel, he indorsed it to Dennis, and the check was paid to Dennis. The delivery of the deed, the execution and delivery of the mortgage, and the payment of the money amounted to a single transaction. At that time Dennis was married and had children. The deed describes the land devised by the will and also the land purchased and held by the brothers as tenants in common. It

contains the covenant of seizin, covenant against incumbrances, a covenant of warranty, and, after the description of the land, the following:

"This conveyance being intended to convey the undivided one-half (½) of the above described lands owned by the first parties hereto."

Daniel Lyons, not having disposed of any of his interest in the lands, died, intestate, without issue, and without having had issue, on the 4th of May, 1916, leaving a widow, three brothers, two sisters, and two children of a deceased brother. The bill in this cause was filed by the widow of Daniel, one brother and his wife, asking for the construction of the will of Cornelius Lyons and of the deed from Dennis to Daniel hereinbefore mentioned, and praying that if the deed conveyed a lesser interest than the whole of Dennis' interest in the land it be reformed because of an alleged mutual mistake of the parties. The cause being at issue, on April 13, 1918, Dennis Lyons died and the administrator of his estate was brought upon the record.

It is agreed that as to the lands other than those coming from Cornelius Lyons the deed from Dennis to Daniel conveyed all of Dennis' interest. But it was the contention of Dennis, and is the contention of his representative, that as to the interest in the lands of their common ancestor which Daniel took by his will it became by the operation of the third clause of the will the property of Dennis because Daniel died without issue and Dennis survived him.

The validity of the third clause of the will is not disputed—is admitted. Assuming its validity and consulting all of its provisions, it is clear that the intent of the testator was that the contingency of issue or no issue was to apply during the life of the devisees. The words and context do not import an indefinite failure of issue. *Strain* v. *Sweeny,* 163 Ill. 603 (45

N. E. 201); *Hall* v. *Chaffee*, 14 N. H. 215; *Stone* v. *Bradlee*, 183 Mass. 165 (66 N. E. 708); *Tinsley* v. *Jones*, 13 Grat. (Va.) 289. All the estate that the testator could convey, subject to the life estate, was devised to the sons, equally, but the estate of either devisee was defeasible upon his death, without issue, during the life of the other. If either died without issue, the survivor took it all, whether he, the survivor, had issue or not. If both had issue, they continued tenants in common of the land. If one had issue, his right to at least an undivided half interest was determined. When Dennis made his conveyance, issue having been born to him, his interest in an undivided one-half of the land was no longer defeasible. He might acquire, by the death of Daniel, the remainder of the land. Whether his interest in one-half of the land was or was not determined upon the birth of issue, the question remains the same. He survived his brother, and his brother died without issue.

Plaintiffs, who are heirs of Daniel, state and argue two principal propositions. They say, first, that Dennis having an indefeasible title to an undivided half of the land, if he had conveyed it to a third person,—

"the title to his said interest in that land, upon the death of Daniel Lyons without issue would have vested absolutely in the grantee. But the conveyance was to Daniel Lyons, the one person having any interest in the property outside of the grantor, and we think when this conveyance was made the fee and the contingent interest were merged in one person and the title bcame absolute in him."

They say, second, that, if the deed of Dennis conveyed any less that his entire interest in the estate, it should be reformed to include his entire interest, because it was the intention of both Daniel and Dennis that Dennis should convey his entire interest.

They contend, and we agree with them, that an estate defeasibly vested—

"has all the qualities of \* \* \* an absolute estate until the divesting contingency happens."

The deed of Dennis to Daniel describes what is conveyed as an undivided one-half interest in the land, in fee. We may admit, for the purposes of this case, that, if both had joined in a warranty deed to a third person, they could have conveyed an absolute, indefeasible title in fee simple. It does not follow that, if one conveyed "an undivided one-half interest" in the land, his grantee, the other brother, dying without issue, the grantor surviving, would have succeeded, by force of his deed, to the title and interest of the deceased brother. The point, it seems to us, does not require argument to sustain it. The deed in question here carefully limits what is conveyed and the covenants of the deed apply to the interest as limited. It secured to Daniel absolute control of the property and all of the income therefrom so long as Daniel lived. But the contingency that he might die without issue, his brother Dennis surviving him, remained, affecting the interest which Daniel acquired from his father, the testator. This contingent interest did not expressly, or by legal implication, pass by the deed.

Testimony warranting the reformation of a deed because of a mutual mistake must be convincing that a mistake was made. The testimony in this case falls far short of this. There is no evidence of any mistake of fact, nor of fraud or concealment. Both sons knew the state of the title. In determining whether an instrument ought to be reformed because not expressing the will or bargain of the parties thereto, the language of the instrument is always important. It is especially important here since it appears that with mutual knowledge of the peculiar condition of the title the grantor executed and the grantee accepted a conveyance containing the clause above set out.

205—Mich.—31.

If it is regarded as of importance, appellants may take a decree here which, instead of dismissing the bill, adjudges that, under the will and the deed, the interest of the heirs of Daniel in the land is limited to an undivided one-half thereof, the other undivided half going to the heirs of Dennis; otherwise, the decree dismissing the bill will be affirmed. Appellees will recover costs of this appeal.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.