ROBERT T. BAMFORD, trustee, *vs.* LOUISE B. HATHAWAY & others.

Essex. April 2, 1940. — May 29, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Devise and Legacy,* Vested or contingent, Lapsed legacy.

The facts, that a testatrix in her will used words of donative significance in provisions for a sister and brother but, with respect to a distribution of a trust fund by the trustee after the deaths of the life beneficiaries in various amounts to thirteen individuals, six of whom were cousins, used no word of such significance; that as to one such legatee, not shown to be a relative, she provided that, if he were not living at the time of distribution, the amount given him should be paid "to his issue by right of representation"; and that she directed that another beneficiary should receive whatever might remain "after paying the foregoing legacies, together with any of" them "which may lapse," disclosed a manifest intention that the vesting of the "legacies" should be postponed until the termination of the life estates, and that "legacies" to "legatees" not then living should "lapse" and become a part of residue.

PETITION, filed on September 26, 1939, in the Probate Court for the county of Essex by the trustee under the will of Lucy B. Hood, for instructions.

From a decree, entered after a hearing by *Phelan, J.,* certain respondents appealed.

The case was submitted on briefs.

*L. B. Colbert,* for Louise B. Hathaway; *R. E. Blake,* for Harriet P. Dresser, executrix, and another; *W. D. Chapple,* for Mary A. Russell and others; *C. A. Green,* for J. F. Punchard and others; *& C. S. Sears,* for Edith C. Philbric & another.

*B. M. Sullivan,* for Laura W. Hood.

RONAN, J. Lucy B. Hood by her will established a trust in certain bank deposits, the income of which was to be paid to her sister during her life; and upon her death one half of the principal of the trust was to be paid to her brother, Edward A. Hood. "The second half of said fund shall con-

tinue in trust and the net income thereof shall be paid to or applied for the benefit of my said brother Edward A. Hood, during his lifetime. After the death both of my said sister and of my said brother, I direct that said second half be distributed discharged of all trusts, as follows:" legacies in certain sums to twelve named individuals; a certain sum to a cemetery; $300 to Arthur I. Pepper "or, if he be not living, to his issue by right of representation," and the will then continued: "Whatever may remain of said second half after paying the foregoing legacies, together with any of the foregoing legacies therefrom which may lapse, I give to my sister-in-law Laura W. Hood." The judge found that both life beneficiaries had died; and that ten of the legatees out of the group of twelve above mentioned had died after the death of the testatrix but before the death of the last life beneficiary. The representatives of these ten legatees appealed from a final decree which ordered "that the legacies set out in Paragraph three (3) of said will to John H. Punchard, Mrs. John H. Punchard, Howard C. Kimball, George Wallace Bird, Martha Hood, Adelaide Hood, Mrs. Sarah Dexter, Mrs. Rebecca Burger, Peter S. Russell and Elmer A. Dresser having lapsed, said legacies are to be paid to the residuary legatee named in said Paragraph three (3), namely Laura W. Hood," and that the legacy to Arthur I. Pepper be paid to his issue.

A will ordinarily speaks from the time of the death of the testator, and it is settled that remainders after a life estate are considered to vest upon the death of the testator, especially where the beneficiaries are children or relatives, unless the provisions of the will manifest an intention that vesting should be postponed until the death of the life tenant. *Bosworth* v. *Stockbridge*, 189 Mass. 266. *Boston Safe Deposit & Trust Co.* v. *Nevin*, 212 Mass. 232. *Commissioner of Corporations & Taxation* v. *Alford*, 282 Mass. 113. *Old Colony Trust Co.* v. *Brown*, 287 Mass. 177. *Second National Bank of Boston* v. *First National Bank of Boston*, 289 Mass. 368. *Cotter* v. *Cotter*, 293 Mass. 500. The direction to distribute the trust fund after the death of both of the life tenants does not prevent the application of the usual rule, *Brown* v.

*Spring,* 241 Mass. 565; *Second National Bank of Boston* v. *First National Bank of Boston,* 289 Mass. 368, and the words "After the death both of my said sister and of my said brother" as a preface to the direction to distribute ordinarily fix the time for possession and enjoyment and usually do not express any contingency that only those then alive shall take. *Bryant* v. *Flanders,* 201 Mass. 373. *Welch* v. *Colt,* 228 Mass. 511. *Hedge* v. *State Street Trust Co.* 251 Mass. 410. The only function of these and all other rules of construction is to aid in the ascertainment of the intent of the testator. All rules must yield to the testator's intent which must always prevail and be given effect if it is consistent with the law. *Hale* v. *Hobson,* 167 Mass. 397. *Heard* v. *Read,* 169 Mass. 216. *McCurdy* v. *McCallum,* 186 Mass. 464. *Crapo* v. *Price,* 190 Mass. 317. *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35. *Bramley* v. *White,* 281 Mass. 343.

The general plan of the testatrix as disclosed by the paragraph in question was to provide primarily for her sister and her brother and then, after their deaths, to distribute the remainder of the trust property among certain relatives and friends. She intended that her sister and brother should get a present interest in her property, and she gives and bequeaths their shares to them — her words in the case of her sister are "I give and bequeath" and in the case of her brother "I give." The legacies now in question are couched in different language from that she employed in caring for her sister and brother. Her trustee is directed to distribute the balance of the trust among certain persons. The absence of words of present donative effect, especially when compared with the language previously employed by the testatrix, indicates that she did not intend to make a present gift to these legatees. *Eager* v. *Whitney,* 163 Mass. 463. *Hale* v. *Hobson,* 167 Mass. 397. *Crapo* v. *Price,* 190 Mass. 317. *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35. It may well be that this circumstance alone might not be sufficient to show that these legatees took a contingent rather than a vested interest. *Brown* v. *Spring,* 241 Mass. 565. *Second National Bank of*

*Boston* v. *First National Bank of Boston,* 289 Mass. 368. But this circumstance must be regarded with the other portions of the paragraph in so far as it sheds any light upon the intent of the testatrix.

The legacy to Pepper is different from all the others in that there is an express provision that "if he be not living" then his legacy is to go to his issue. The findings of fact do not show that Pepper was a relative and do not afford any explanation for this provision. We think that the words quoted must be construed to mean that the legacy was not payable to Pepper unless he survived both life tenants, and that if he predeceased either of them his legacy would not fall into the residue but would go to his issue. *Clarke* v. *Fay,* 205 Mass. 228, 231. *Johnson* v. *Brink,* 271 Mass. 521, 531. The language suggests that the testatrix believed that she had not given Pepper any present interest in her property and that to prevent the legacy from becoming a part of the residue it was necessary to make some additional provision. Six of these legatees were cousins. A bequest to a cousin, in the absence of a provision in the will expressing a contrary intent, would not lapse on account of the death of the cousin prior to that of the testatrix, G. L. (Ter. Ed.) c. 191, § 22; *Union Trust Co. of Springfield* v. *Bingham,* 273 Mass. 287, if the cousin left issue surviving the testatrix. But these cousins survived the testatrix and there is nothing to show that the testatrix might not reasonably have anticipated that such an event would occur. Yet the will expresses no preference for these relatives. It makes no distinction in this group of legatees between relatives and strangers. All are treated alike except Pepper. The testatrix did not desire his legacy to lapse. She expresses no such design as to the others. It is significant that no similar provision was made for any other legatee. This is indicative of an intent that the other legacies would lapse if the takers did not survive the life tenants.

We think the lapsed legacies that the testatrix had in mind are those that could not be paid in accordance with her directions for the distribution of the fund. If she in-

tended to give these legatees an interest in their legacies
which vested at the time of her death, there would seem
to be little likelihood that any of these legacies would not
become operative; but if, as it seems more probable, she
did not intend that these legatees should take unless they
were living at the time for distribution, then it would be
necessary to make other provisions for bequeathing the
amounts included in such legacies. She not only provided a
residuary clause but also expressly provided that all lapsed
legacies should become a part of the residue. We think
that this residuary clause when read in conjunction with
the entire paragraph of the will, including the terms of the
legacy to Pepper, manifests an intention that the legacies
of those who did not survive the life tenants, with the excep-
tion of Pepper, should fall into the residuary clause.

The present case is settled in principle by *Pollock* v.
*Farnham*, 156 Mass. 388, where the will provided that upon
the death of a life beneficiary a legacy should be paid to
the testatrix's cousin and, in the event of her death, the
same should be paid to her daughter and a second legacy
was given to a niece, and then provided that the rest of the
property "including any and all legacies which may fall
from the death of the legatee or legatees" (page 389) should
be put in trust, the income from which was payable to the
niece for life. It was held that the legacy to the cousin who
predeceased the first life tenant went to her daughter be-
cause, the legacy being payable upon the death of the life
tenant, the time when it became payable was the time
when it must be determined whether it should go to the
cousin or her daughter. It was also held that the legacy to
the niece lapsed by her death previous to the death of the
first life tenant; and that the testatrix intended legacies
"which . . . [should] fall from the death of the legatee"
to include not only those that should lapse in the lifetime
of the testatrix but also all such legacies that should "fall"
if the legatees died before the death of the first life tenant
and such legacies became a part of the residue, excepting
the legacy to her cousin which, if she did not survive the
first life tenant, was to go to her daughter.

The decree of the Probate Court, determining that the legacies in question "having lapsed" the sums involved should be disposed of as part of the residue, was right.

*Decree affirmed.*