Isadore Bookstein, J.
This is a proceeding by petitioner for a judicial settlement, for the period from June 2, 1947 to October 15, 1962, of its account as trustee of a certain inter vivos trust indenture dated October 11, 1937, made by Benjamin M. Tucker and William Tiffany Tucker; and for a construction concerning the disposition of $25,000 referred to in paragraph 2 (a) of said trust indenture of October 11, 1937.
No objections have been raised by any party to the account.
The only question left, therefore, concerns the disposition of the $25,000 heretofore referred to in paragraph 2 (a) of the trust indenture of October 11, 1937, which provides as follows: “To hold the part consisting of three-fourths in value in trust during the life of pauline a. tucker, wife of Benjamin M. Tucker and shall collect the income therefrom and from any reinvestments thereof and after paying and discharging all taxes, charges and expenses in connection with *406 the care and management of the fund, shall pay to or apply to the nse of said pauline a. tucker, the net income therefrom in quarterly installments during her life and upon her death, shall pay, transfer and set over said fund to the lawful blood issue of said benjamin m. tucker then living, in equal shares, per stirpes, and in default of such issue, to such persons and/or corporations as said benjamin m. tucker shall by his Last Will and Testament appoint to receive the same, and in default of a valid appointment to the persons then living who would have been entitled to his personal estate under the intestate laws of New York if his death had occurred at that time. In the event, however, that no further lawful blood issue shall be born to said Benjamin M. Tucker, the Trustee shall, anything herein to the contrary notwithstanding, pay the sum of $25,000. in cash (to be realized from the liquidation of securities) out of the principal of said trust fund to such persons and/or corporations as said benjamin m. tucker may by his Last Will and Testament appoint to receive the same. It is agreed that such power to appoint herein given may be exercised by said benjamin m. tucker, regardless of the fact that william tiffany tucker or issue of william tiffany tucker may then be living.”
Paragraph 8 of said trust indenture contains the following provision: “ This agreement shall be construed and the trusts hereby created shall be administered pursuant to the laws of the State of New York, and no accounting shall be required of the Trustee or any successor trustee acting hereunder in any other jurisdiction.”
Benjamin M. Tucker died on the 15th day of October, 1962, a resident of Wellesley, Massachusetts. He left a last will and testament dated June 25, 1934, which was duly admitted to probate in the Probate Court of Norfolk County, Commonwealth of Massachusetts on the 16th day of January, 1963.
It should be noted that said last will and testament antedated by more than two years the trust indenture, of which paragraph 2 (a) is sought to be construed in this proceeding.
It should also be noted that no further lawful blood issue were born to said Benjamin M. Tucker after October 11, 1937, the date of the trust indenture. At the date of his death, his sole issue was his son, William Tiffany Tucker, who had two children, Tiffany Anne Tucker and Treva Jean Tucker, both born during the lifetime of Benjamin M. Tucker.
Paragraph first, subdivision 1 (c) of the last will and testament refers to the trust agreement dated December 27, 1920 between Benjamin M. Tucker and his former wife as settlors and William J. Mullin and Warner B. Matteson, as trustees, *407 and quotes from page 4, article 1, section (c) thereof, which reserves a power of appointment to said Benjamin M. Tucker, in the event that there be no issue him surviving and then proceeds purportedly to exercise such power, in the event there be no lawful issue him surviving, in the following language: “ Now, therefore, by virtue of and pursuant to the right, power and authority or appointment given to me in and by said Indenture of Trust and of every other power me hereto enabling.” Since the testator did have lawful issue him surviving, there was no power of appointment possessed by him under the trust indenture of December 27, 1920.
As a matter of fact, the indenture thus referred to dated December 27, 1920 was terminated by an instrument in writing dated July 1, 1937, nearly three years after the date of the last will and testament of Benjamin M. Tucker.
Prior thereto, Benjamin M. Tucker and Eugenia M. Tucker, his wife, as settlors, and William J. Mullin and Warner B. Matteson, as trustees, had executed a trust indenture, dated April 6, 1912, in which said Benjamin M. Tucker, reserved a power of appointment in certain contingencies.
That trust indenture was likewise terminated by the above-mentioned instrument of July 1, 1937, nearly three years after the date of the last will and testament of said Benjamin M. Tucker.
Specific reference to the power of appointment reserved in the trust indenture of October 11, 1937 was not made in the last will and testament of Benjamin M. Tucker.
Obviously, at the date of his will, June 25, 1934, Benjamin M. Tucker regarded the trust indenture of April 6, 1912 superseded by the trust indenture of December 27, 1920, which was in force at the date of his last will and testament.
As we have seen, both of the trust indentures of April 6, 1912 and of December 27, 1920 were terminated by the agreement of July 1, 1937, which agreement followed the date of his last will and testament by nearly three years.
Thus, at the date of his will when he referred to the power of appointment, he was referring to the one then in existence, but which, thereafter, was terminated. In other words, his will then spoke of a power then existing.
However, in his will he not only purported to exercise the power of appointment contained in the trust indenture of December 27, 1920, which at the date of the will was in full force and effect and which was thereafter terminated, but also exercised “ every other power me hereto enabling.”
*408 The power of appointment in existence at the date of his death was the one contained in the trust indenture involved in this proceeding, dated October 11, 1937, made after the termination of the trust indentures of 1912 and 1920, and after the date of his will.
Paragraph fifth of the last will and testament of Benjamin M. Tucker provides as follows:
1 ‘ All the rest, residue and remainder of my estate, real, personal and mixed, of every kind, nature and description and wherever situate or being, of which I shall die seized and possessed or over which I shall have any power of appointment or control at the time of my death, but expressly directing that this residuary clause shall not be construed as and shall not operate as, an exercise of the particular power of appointment and direction given me in and by the Indenture of Trust referred to in Article first of this will in derogation of my exercise of said power of appointment and direction in and by said Article first of this my last will, and hereby and herein expressly confirming my exercise of said power of appointment and direction as indicated in Article first of this my last will and testament, I give, devise, bequeath and appoint to the Old Colony Trust Company, of Boston, Massachusetts, strictly in trust, however, for the following uses and purposes:
“ To pay the net income from said trust to my said wife by my second marriage, Pauline A. Tucker, whose maiden name was Pauline Ackers, quarterly for life, and at her death, I direct my said Trustee to pay over the then trust fund, free and discharged of all trusts, to The Mother Church, The First Church of Christ, Scientist, in Boston, Massachusetts, to be used as may be determined by the Board of Directors of this Church, for the purpose of promoting and extending the religion of Christian Science as taught by Mary Baker Eddy.”
Thus, in paragraph first of the last will and testament of Benjamin M. Tucker, he purported in the event no lawful issue survived him, to exercise the power of appointment mentioned in the trust indenture of December 27,1920,6 ‘ and of every other power me hereto enabling''’. As we have already seen, since he did have lawful issue him surviving, no power of appointment rested in Benjamin M. Tucker under the agreement of December 27, 1920.
And in paragraph fifth of the last will and testament of Benjamin M. Tucker he made a disposition of property “ over lohich I shall have any power of appointment or control at the time of my death ”.
*409 In paragraph third of the last will and testament Benjamin M. Tucker bequeathed to his son, William T. Tucker, some small items of personal property and said: “I make no provision otherwise for my son, William T. Tucker, because provision has been made for him under the Indenture of Trust dated December 27, 1920, referred to in Article first hereof, and the omission to make further provision for him in this my last will and testament does not arise through any inadvertence or lack of regard or consideration for him.”
The contenders for the fund of $25,000 here involved are the said William T. Tucker on the one hand and Pauline A. Tucker and The Mother Church, The First Church of Christ, Scientist, on the other.
William T. Tucker contends that since paragraph third of the last will and testament makes no provision for him because he was provided for by the trust indenture dated December 27, 1920, it is evidence that there was no intention to exercise the power created by the trust agreement of October 11, 1937, but rather an intention to exercise only the power created by the trust agreement dated December 27, 1920.
To my mind such contention is untenable and is plainly negatived by several factors.
In the first place, in his will the testator did not limit in paragraphs first and fifth the exercise of his power of appointment to the one created by the trust indenture of December 27, 1920, since in both places he included any other power of appointment vested, in him.
In the second place, the testator brought an action in Supreme Court, Albany County, to declare the trust indentures of December 27, 1920 and April 6, 1912 void. That action came to trial before Mr. Justice Bergakt and was settled during trial by an agreement in writing dated July 1st, 1937, approved by Justice Bergah, which terminated the trust indentures of April 6,1912 and December 27, 1920. But the agreement terminating those trust indentures did not deprive the son, William T. Tucker, of the benefits conferred upon him by the trust indenture of December 27, 1920. The termination agreement provided for the payment to said William T. Tucker, out of the corpus of the trust fund in existence as the result of the trust indenture of December 27, 1920, of the sum of $86,375.99.
Thus, at the date of the last will and testament, testator made no provision, aside from the small bequests of personal property, for the reason that he was amply provided for in the trust indenture of December 27, 1920.
*410 Thus, too, at the date of death, as of which date the will speaks, it was likewise true that testator had made ample provision for William T. Tucker.
The only difference in the situation, as it then existed, is that William T. Tucker had already received the benefits of the trust agreement of December 27, 1920. The payment of those benefits, instead of awaiting the death of Benjamin M. Tucker, was expedited and paid to William T. Tucker during the lifetime of Benjamin M. Tucker, pursuant to the terms of the agreement of July 1, 1937, terminating the trust indentures of April 6, 1912 and December 27, 1920.
It was after such termination of said trust indentures of April 6, 1912 and December 27, 1920, that the testator executed the final trust agreement of October 11, 1937, which reserved power of appointment over the $25,000 here in dispute.
It is not difficult to comprehend reasons why testator saw no reason to execute a new will. He knew that the ample provision for his son mentioned in paragraph fifth of his will had already been received by his son, under the cancellation agreement of July 1, 1937. He also knew that the new trust indenture of October 11, 1937, gave him a power of appointment over $25,000 of the corpus of the trust created thereby. And he knew that while his will referred to the trust agreement of December 27, 1920, that it also in paragraphs first and fifth of his will referred to any other power of appointment vested in him.
It cannot be seriously maintained that the sequence of events, by any possibility, showed an intention, by will or otherwise, not to exercise the power of appointment contained in the trust indenture of October 11, 1937.
It is true that the termination agreement provided that said William T. Tucker should contribute to a new trust fund the sums of $28,791.99 and $57,584, aggregating the total sum of $86,375.99, the precise amount which he received in acceleration, upon the cancellation of the trust indentures of April 6, 1912 and December 27, 1920. It further provided that Eugenia M. Tucker, testator’s first wife, should contribute $49,414.39, the precise amount paid to her upon cancellation of the trust indentures of April 6, 1912 and December 27, 1920. It further provided that testator should contribute to the new trust fund the sums of $3,703.86 and $106,236.49, aggregating $109,940.35, plus whatever there might remain after payment of the items mentioned in paragraph 2 (b) of the cancellation agreement. The total amount paid to testator under the cancellation agreement was $124,940.35. The amount contributed by him to the *411 new trust fund was $109,940.35 or $15,000 less than he received under the cancellation agreement. However, that agreement expressly provided, in paragraph fourth thereof, that out of the amount paid to the testator, under the cancellation agreement, he was to retain $15,000.
The cancellation agreement also provided that testator would execute and deliver simultaneously with the delivery of the cancellation agreement a separate agreement, wherein he would agree to execute a will in which he would fully exercise his power of appointment over all funds capable of being appointed by him under the indentures of 1912 and 1920.
There is no evidence that any such agreement was ever executed or delivered. And there is no evidence of any will other than the will of June 25, 1934.
The only writing in evidence after the date of the termination agreement, to wit, July 1, 1937, is the new trust indenture of October 11, 1937.
It must be borne in mind that William T. Tucker was a party to the cancellation agreement of July 1, 1937 as well as the new trust agreement of October 11,1937.
Presumptively, he knew that the provision for the separate agreement on the part of the testator in which he would agree to execute a will in which he would fully exercise his power of appointment over all funds capable of being appointed by him under the indentures of 1912 and 1920, had not been complied with and probably was abandoned by mutual consent.
The trust agreement of April 6, 1912 provided for the corpus of the estate to be paid to the lawful issue of Benjamin M. Tucker upon the death within 25 years of the survivor, i.e., either Benjamin M. Tucker or his wife, Eugenia M. Tucker.
The power of appointment therein existed only if there were no issue of said Benjamin M. Tucker, him surviving.
The trust agreement of December 27, 1920 was of similar import as was the power of appointment, except that it eliminates the 25-year provision contained in the trust indenture of April 6, 1912.
Thus, William T. Tucker would have been the beneficiary of the corpus of the trust in that agreement.
The trust agreement of October 11, 1937 provides for the corpus of the estate to go to the lawful blood issue surviving Benjamin M. Tucker on the expiration of the lives of Pauline A. Tucker, his second wife, and Eugenia M. Tucker, his first wife. That would be the said William T. Tucker, unless he predeceased said Pauline A. Tucker and Eugenia M. Tucker, in *412 which event the corpus would go to his children, the infants herein.
The only difference between the trust agreements of 1912 and 1920 and the one of 1937, is that in the event that no further blood issue should be born to said Benjamin M. Tucker, he should have the power of appointment over $25,000, out of the corpus of the trust fund.
Thus it is seen, that even though William T. Tucker contributed to the new trust fund what he received out of the trust funds of 1912 and/or 1920 under the cancellation agreement, he, or his children, became the beneficiaries of the corpus of the trust fund, after the death of the two life tenants thereof, except for the sum of $25,000.
The new trust agreement of October 11, 1937, makes it abundantly clear why the agreement on the part of Benjamin M. Tucker provided for in the cancellation agreement was never executed. The new trust agreement took care of the situation as fully and adequately, as the agreement provided for in the cancellation agreement, and, indeed, more so.
William T. Tucker was a party to the agreement of October 11, 1937 and was fully aware of the power of appointment therein over $25,000, in the single event that there was no further blood issue born to Benjamin M. Tucker.
Except for that sum of $25,000, he or his children are just as fully the beneficiaries of the corpus of the trust fund as they were under the trust indentures of 1912 and 1920.
The questions presented are:
(1) Did Benjamin M. Tucker have the power of appointment to dispose of the $25,000 referred to in the trust indenture of October 11, 1937?
(2) Did he exercise such power of appointment by his last will and testament, and, if so, was such exercise valid?
There can be no misconstruction of the plain provision of the power of appointment over $25,000 of the corpus of the trust indenture of October 11, 1937. There is no possible ambiguity as to that.
This is true whether the power of appointment is construed under the laws of the State of New York, as provided for in the trust indenture or under the laws of Massachusetts of which Benjamin M. Tucker was a domiciliary at the date of his death.
The real question is, if the valid power of appointment existed, as to which there can be no doubt, did Benjamin M. Tucker have the right to exercise same, under his will executed in Massachusetts, in which State he was domiciled and which was probated in Massachusetts, of which he was a domiciliary at the date of his death, and did he do so effectively?
*413 In Matter of Spitzmuller (279 App. Div. 233, 235, affd. 304 N. Y. 608) the settlor established two inter vivos trusts in France, in which trust indentures he was described as a resident of Connecticut. The income was to be paid for life to his wife and upon her death, the corpus was to be paid to such person as the settlor ‘ ‘ may by his last will and testament designate and appoint.” The settlor died in Switzerland. His wife died thereafter and the trusts terminated. The trust agreements provided that they were to be construed according to New York law. The settlor had executed a will in Italy in March, 1937, which stated that he was a native-born citizen of the United States “now domiciled in Florence, Italy”. No mention of the inter vivos trust was made in the will. The settlor, while temporarily residing in Europe, regarded himself as a domiciliary of Connecticut. The common law of Connecticut requires affirmative evidence of the exercise of a power of appointment. Nor was there proof as to Italian law governing the subject of the exercise of a power of appointment, and the court held that it would seem that, under Italian law, an affirmative exercise of the power is necessary in that jurisdiction.
The court held that section 18 of the Personal Property Law had no application to the construction of the will, even though the trust agreement provided for its construction according to the laws of New York; that the will was to be construed according to the laws of the domicile of the testator and that neither Connecticut nor Italy provided the presumption afforded by section 18 of our Personal Property Law and that, accordingly, the testator did not execute the power of appointment reserved in his trust agreement.
In Matter of Deane (4 N Y 2d 326) the settlor of the trust was a resident of this State and in the trust indenture he gave his former wife a power of appointment. She made a will without mentioning the power of appointment. The will was made in Texas and recited that she was a domiciliary of New Jersey. The trust agreement, as here, provided that the validity of the construction of the trust indenture should be determined by the laws of the State of New York. The court held that section 18 of the Personal Property Law of this State was applicable to the construction of the will. Primarily, the basis for the decision was the proposition that the construction of a will, insofar as it involves the exercise or no of a power of appointment ‘ ‘ is governed by the law of this state, the domicile of the donor of the power, and the situs of the property ”. It also stated that the law of New Jersey, in that respect, *414 is the same as ours. It distinguishes Matter of Spitzmuller (304 N. Y. 608) in that in that case, the same person was both creator and donee of the power, and never had a domicile in New York. Accordingly, it held that the will contained a valid exercise of the power of appointment, although no specific mention of the power of appointment was made therein.
The case is unequivocal authority for the proposition that the construction of the will of the donee, insofar as it involves the exercise of the power of appointment is governed by the law of the donor’s domicile, which in that case was New York.
In this case, we are dealing with a power of appointment created subsequent to the execution of a last will and testament.
A will is ambulatory and speaks as of the date of death. (Hirsch v. Bucki, 162 App. Div. 659.) The law in that respect is the same in Massachusetts. (West v. Day Trust Co., 328 Mass. 381; Bamford v. Hathaway, 306 Mass. 160; Galloupe v. Blake, 248 Mass. 196.)
There is ample authority for the proposition that a power of appointment made subsequent to the execution of a last will and testament permits the exercise thereunder of such subsequently created power. (County Trust Co. v. Quencer, 183 Misc. 922; Matter of Davis, 186 Misc. 397.)
In that respect, the law of Massachusetts appears to be the same.
Newhall, Settlement of Estates (4 ed., 1958 with 1963 Supp.) footnote 3 of section 366 dealing with the law of Massachusetts says: “ A power existing at the donee’s death but created after the execution of his will is effectively exercised thereby if the will is an otherwise effective appointment, unless (a) the donor manifests an intent that the power may not be exercised by a will previously executed, or (b) the donee manifests an intent not to exercise a power subsequently acquired.”
Were the question here presented to be determined by New York law, there could be no question but that Benjamin M. Tucker exercised the power over the $25,000 fund here involved and which was reserved to him under the trust indenture of October 11, 1937.
Section 18 of the Personal Property Law provides as follows: “ Power to bequeath executed by general provision in will. Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication.” *415 Section 18 of the Personal Property Law created a presumption that property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication. The presumption established by said section may be rebutted only by the express language or the necessary implication of the express language of the will itself. (Matter of Deane, 4 N Y 2d 326, supra.) Moreover, as already pointed out, in the will of Benjamin M. Tucker, he expressly indicated his intention to exercise any power of appointment enabling him to do so.
In this case, however, the creator of the power and the donee thereof was the same person, Benjamin M. Tucker. He was a domiciliary of Massachusetts when he executed his will, when he created the power and when he died. His will was probated there.
Accordingly, under the authority of both Matter of Spitzmuller (304 N. Y. 608, supra) and Matter of Deane (4 N Y 2d 326, supra) the question of whether or not he could and did exercise the power must be determined by the law of Massachusetts. With reference to section 18 of our Personal Property Law, the law of Massachusetts is the same. (Stone v. Forbes, 189 Mass. 163; Second Bank-State St. Trust Co. v. Yale Univ. Alumni Fund, 338 Mass. 520.)
Accordingly, I conclude that Benjamin M. Tucker has made a valid exercise by his last will and testament of the power of appointment reserved by him in the trust indenture of October 11, 1937, over the $25,000 fund here in question.
Accordingly, the petitioner is to pay said fund to Old Colony Trust Company, of Boston, Massachusetts, to be held by it in trust, and to pay the net income thereof to Pauline A. Tucker, quarterly for life, and at her death to pay over the fund to The Mother Church, The First Church of Christ, Scientist, in Boston, Massachusetts, to be used as may be determined by the board of directors of said church, for the purpose of promoting and extending the religion of Christian Science as taught by Mary Baker Eddy.