Moses Williams & another, trustees, *vs.* Francis C. Welch & others, executors, & others.

Plymouth. November 3, 1970. — December 30, 1970.

Present: Tauro, C.J., Spalding, Kirk, Reardon, & Quirico, JJ.

*Devise and Legacy,* Time of vesting, Remainder.

Under a will indicating an intent of the testatrix to keep her property in the family blood line, and creating two separate similar trusts, one for her son and one for her granddaughter, her son's niece, and providing with respect to the son's trust that he should have the income therefrom for life, that by his will he could appoint principal to his issue and a life interest in one half of the income to his widow, that in default of such a will or of issue the principal should be distributed "to his heirs-at-law by blood: provided, that any portion so coming . . . [to the granddaughter] shall not be paid to . . . her but shall be added to and form a part of the Trust fund hereby created for" her, and where it appeared that the son died without issue but leaving a widow to whom he appointed by will the income of one half of his trust fund for life, that one half of the principal of his trust was

paid to the trust for the granddaughter as his sole heir at law by blood, that subsequently she died without issue or husband and her trust was distributed to her heirs at law by blood, and that some years after the granddaughter's death the widow of the son died, it was held that the one-half portion of the son's trust from which his widow had received the income should be added to the trust created for the granddaughter and should be distributed to her heirs at law by blood, not to the executors under her will.

PETITION for instructions filed in the Probate Court for the county of Plymouth on May 1, 1968.

The case was heard by *Lawton, J.*

*John Henderson Linsley* stated the case.

*H. Burton Powers* for Francis C. Welch & others.

*William Minot* for Rebecca N. White & others.

KIRK, J. This is a petition for instructions in the Probate Court of Plymouth County by the trustees under the will of Susan Barnard. The trustees seek to determine whether trust assets held under the provisions of the testatrix's will should be distributed to the heirs at law by blood of the testatrix's granddaughter, Mary Curtis, or to the executors of the estate of Mary Curtis. The probate judge by decree directed that the trust assets be distributed to Mary's heirs at law by blood. Mary's heirs at law by blood ask that the decree be affirmed. The executors of Mary's will appealed.

Susan Barnard died in 1899. In her will, she created, inter alia, two separate similar trusts. One was for her son, Charles Barnard. The other was for her granddaughter, Mary Curtis. The trust assets which are the subject of the present dispute are held under the provisions of the trust created for Charles. In the will the trust is designated "A" under article Fourth and provides as follows: "A. To hold, manage, and keep invested one-third part of . . . [the residue of the testatrix's estate] for and during the life of my son Charles Inman Barnard: to pay the net income of such one-third in strict trust to my son Charles Inman Barnard for and during his life. And at and upon his decease, to transfer, pay over and convey the Trust fund theretofore held for his benefit, to and among, or for the benefit of, his issue and widow if any, in such parts and proportions

and upon such terms and limitation as he by his last will lawfully established may direct and appoint; provided, however, that he shall have no power to devise to his widow any larger interest or estate in said Trust property, than one-half of the income thereof, to be enjoyed by her during her life and widowhood. In default of such will, then to transfer, pay over and convey said share to his lawful issue, if any, then living, in equal shares, one share for each child of his then living and one share for the issue by representation whether of different degrees or not, then living of any child of his then deceased. *In default of such issue, then to transfer, pay over and convey the same to his heirs-at-law by blood: provided, that any portion so coming . . . to my granddaughter Mary shall not be paid to . . . her, but shall be added to and form a part of the Trust fund hereby created for my said . . . granddaughter . . ."* (emphasis supplied).

Under the terms of this trust, Charles Barnard was to receive the income from the trust fund for his life and had the special power to direct the disposition of the corpus to and among his issue. In addition, he could appoint to his widow a life interest in the income of one-half of the principal. In default of a will appointing the property, the trustees were directed to distribute to the beneficiary's issue by right of representation. In default of issue, the trustees were directed to distribute to Charles's heirs at law by blood with the proviso that any portion of the fund going to Mary, the testatrix's granddaughter (and Charles's niece), was not to be paid directly to her but was to go into the trust created for her.

The trust created for Mary, designated "C" under article Fourth in the will, was essentially identical to the one created for Charles. It provides for a similar special power of appointment and has a proviso that any portion of her fund going to Charles was not to be paid directly to him but was to go into the trust created for him.

Charles died testate in 1942. He left a widow, Jeanne Barnard, but no issue surviving him. Mary Curtis was his sole heir at law by blood. In his will, Charles exercised his

power to appoint the income of one-half of his trust fund to his widow for her life. The other half of the principal was distributed to the trust fund held for the benefit of Mary, since Mary was Charles's only heir at law by blood.

Mary died testate in 1956 without issue or husband surviving her. She did not exercise the power of appointment in her trust. Her trust fund, including the one-half portion she received from the trust created for Charles was distributed pursuant to the provisions of her trust to her heirs at law by blood.

The income of the other one-half portion of Charles's trust was paid to his widow until her death in 1967. This one-half portion is now available for distribution and is the subject of the petition for instructions. Since Mary was Charles's sole heir at law by blood, such portion must either be paid to Mary's estate and be distributed by her executors or it must be added to the trust created for her and be distributed to her heirs at law by blood as was the other half portion which was distributed when she died in 1956. In order to determine the proper distributees, we must decide (1) when the one-half portion reserved for the payment of income to Charles's widow vested, and (2) whether the proviso in the trust created for Charles (that any portion "coming to . . . Mary" should not be paid directly to her but should be added to the trust created for her) was still operative when Charles's widow died. The probate judge decreed that the reserved portion should be added to the trust created for Mary and be distributed to her heirs at law by blood.

The judge was right. There is no language in Susan Barnard's will manifesting an intention that the gift over to Charles's heirs at law by blood, in this case Mary Curtis, be contingent. None of the parties to the litigation contends otherwise. All agree that the entire gift vested upon Charles's death. The executors of Mary's will argue, however, that the one-half portion in which Charles's widow had a life interest vested directly in Mary as Charles's sole heir and that the proviso under which it would have been

added to Mary's trust was no longer operative on the death of Charles's widow, when such portion was available for distribution.    The heirs at law by blood assert that this portion vested completely in Mary's trust, that it is irrelevant that Mary died before Charles's widow, and that the proviso in the trust created for Charles controls the disposition of this portion and clearly indicates the intention of the testatrix to keep this portion within the family blood line.

It is clear that when Charles died without issue the proviso in the trust created for him governed the disposition of the portion he did not reserve for the benefit of his widow. This portion indisputably vested in Mary's trust.    We think it is also clear that a power given to Charles to appoint income to his widow for her life cannot control the ultimate disposition of the half of the principal reserved for her benefit.    The language of the will is unequivocal.    The testatrix clearly intended ". . . that any portion so coming . . . to my granddaughter Mary shall not be paid to . . . her, but shall be added to and form a part of the Trust fund hereby created for my said . . . granddaughter."

The fact that Mary, as the remainderman, died before the second life tenant, Charles's widow, does not affect the operation of the proviso.    It is a fundamental rule that a transfer of property to A for life, to B for life, and remainder to C vests upon the creation of the interest and goes to C whether or not C is living when the property vests in possession.    *Stone* v. *Bradlee,* 183 Mass. 165, 171–172.    *Bosworth* v. *Stockbridge,* 189 Mass. 266, 267–268.    *Nickerson* v. *Harding,* 267 Mass. 203, 207.    In order to change this result there must be a specific reference in the creating instrument indicating that the remainderman must survive the life tenant in order to take.    *Old Colony Trust Co.* v. *Tufts,* 341 Mass. 280, 285.    *Bamford* v. *Hathaway,* 306 Mass. 160, 161–163.

In *Second Natl. Bank* v. *First Natl. Bank,* 289 Mass. 368, 374–375, a situation similar to the instant case, it was held that interests in remainder passed to the trustees and not directly to the beneficiaries and none of the interests failed because the person holding the equitable remainder interest

died before the life beneficiary. The case of *Mills* v. *Blakelin*, 307 Mass. 542, relied upon by the appellants, is distinguishable both in fact and in law from the instant case.

The result we reach most closely fulfills the clearly expressed intention of the testatrix as manifested by the specific proviso in the trust created for Charles and by the will as a whole. *Prince* v. *Prince*, 354 Mass. 588, 593. The entire scheme of the will discloses the intent of the testatrix to benefit the respective issue of her sons and if there was no issue to keep the property in the family blood line by having it go to the "heirs-at-law by blood." The provisions of the trust created for Charles and Mary, as well as the trust established for her other son, show that the testatrix sought to prevent her property from ending up in the estates of her life income beneficiaries. It is reasonable to infer that since it was possible that the "heirs-at-law by blood" of either Charles, Mary or her other son might be any one of them, the testatrix was impelled to include the proviso that if this occurred, any distribution going to them would not go to them directly, but into their respective trusts. Such a clear intent is conclusive. *Old Colony Trust Co.* v. *Tufts*, 341 Mass. 280, 282–283.

The decree is affirmed; costs and expenses of appeal to be awarded in the discretion of the probate judge.

*So ordered.*